[No. C039251. Third Dist. Feb. 27, 2002.]

TRACY EDUCATORS ASSOCIATION, CTA/NEA, Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
TRACY UNIFIED SCHOOL DISTRICT et al., Real Parties in Interest.

## COUNSEL

Driscoll & Associates, Thomas J. Driscoll, Jr., and Terrence B. Ohler for Petitioner.

No appearance for Respondent.

Seyfarth Shaw, Michael J. Sears, Michael J. Burns and A. Kimberly Toure for Real Parties in Interest.

## OPINION

**DAVIS, Acting P. J.**—The newly elected president of petitioner Tracy Educators Association, CTA/NEA (the Association) requested a half-time leave of absence from her position as a schoolteacher in order to fulfill her responsibilities for the Association. The real parties in interest, Tracy Unified School District, its governing board and superintendent (collectively the District), rejected the request. The Association filed a petition for writ of mandate in the respondent superior court seeking to compel the District to grant the leave request, but the superior court denied the petition. Because we conclude the District was compelled by Education Code section 44987, subdivision (a) (hereafter section 44987(a)),[1] to grant the leave request, we shall order the issuance of a writ of mandate directing the respondent superior court to grant the writ petition.

### BACKGROUND

The District employs Julie Escobedo as a third grade bilingual teacher. In May 2001, Escobedo was elected president of the Association for a two-year term. On May 29, 2001, Escobedo wrote to the District, requesting that she

---

[1]Undesignated section references are to the Education Code.

be released from her teaching position half-time, at the start of the 2001-2002 school year, to attend to the Association's business. Escobedo stated she would seek a bilingual teacher to share a job with her "2.5 days a week or possibly every afternoon." Escobedo enclosed a copy of a provision of the Education Code (presumably section 44987(a)), which she asserted authorized her leave request so long as the Association reimbursed the District for her release time.

On June 6, 2001, the District rejected Escobedo's half-time leave request, asserting the District may place reasonable limitations on leaves granted under the Education Code. The District maintained that a reasonable limitation is the amount of leave authorized for union business by the parties' "Master Agreement," i.e., up to 36 days or 180 periods of leave. The District further argued that granting Escobedo a half-time leave would adversely affect the school's "bilingual program, its students, its teachers and the District's rights and powers."

On June 13, 2001, the Association's attorneys made an express demand on the District for Escobedo's half-time leave pursuant to section 44987(a). On June 19, 2001, and again on July 3, 2001, the District's attorneys responded that the District disagreed with the Association's interpretation of section 44987(a), but would agree to discuss alternatives to allow Escobedo to take a reasonable amount of leave time.

On July 31, 2001, the Association filed a petition for writ of mandate in the respondent superior court, seeking an order directing the District to grant Escobedo's half-time leave request for the 2001-2002 and 2002-2003 school years. During the hearing on the petition, the District conceded that if Escobedo had requested a full-time leave of absence the District would have been compelled to grant her request.

On August 31, 2001, the respondent court filed an order denying the petition, explaining: "Petitioner's request was not for a 'leave' as contemplated by the [sic] Education Code [s]ection 44987. Moreover, the 'Association Leave' Article in the Master Agreement between the Parties does not conflict with the Education Code; it offers benefits not otherwise available under the Education Code."

On September 7, 2001, the Association filed a petition for writ of mandate in this court, seeking an order compelling the respondent superior court to vacate its order denying the writ petition filed in that court and to issue a writ compelling the District to grant Escobedo's request for a half-time leave. We issued an alternative writ of mandate.

■ "Mandamus is appropriate 'where there is not a plain, speedy, and adequate remedy, in the ordinary course of law.' (Code Civ. Proc., § 1086.) . . . [T]his court necessarily determined that appeal was not an adequate remedy when it issued the alternative writ [citations]."[2] Given the time that would be consumed by an appeal from the respondent court's order denying the Association's writ petition, Escobedo's two-year term of office could well expire before this court's decision on appeal could become final.

## DISCUSSION

■ The Association contends the language of section 44987(a) requires the District to grant Escobedo's request for a half-time leave to attend to the business of the Association. We agree.

1. *Section 44987(a) Includes Half-time Leaves of Absence.*

■ The meaning of section 44987(a) "presents a question of statutory interpretation for us to determine independently. [¶] The objective of statutory interpretation is to ascertain the Legislature's intent to effectuate the law's purpose. In determining intent, we look first to the statute's words and give them their usual and ordinary meaning. When the language is unambiguous, there is no need for judicial construction. When the language is susceptible of more than one reasonable interpretation, however, we look to a variety of extrinsic aids, including the statutory scheme of which the statute is a part, the legislative history, and the ostensible objects to be achieved."[3]

■ "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] . . . An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation]."[4]

Section 44987(a) provides in pertinent part: "The governing board of a school district shall grant to any employee, upon request, a leave of absence without loss of compensation for the purpose of enabling the employee to

---

[2]*Robbins v. Superior Court* (1985) 38 Cal.3d 199, 205 [211 Cal.Rptr. 398, 695 P.2d 695].
[3]*Praiser v. Biggs Unified School Dist.* (2001) 87 Cal.App.4th 398, 401 [104 Cal.Rptr.2d 551], footnotes omitted (*Praiser*).
[4]*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].

serve as an elected officer of any local school district public employee organization, or any statewide or national public employee organization with which the local organization is affiliated.

"The leave shall include, but is not limited to, absence for purposes of attendance by the employee at periodic, stated, special, or regular meetings of the body of the organization on which the employee serves as an officer. . . .

"Following the school district's payment of the employee for the leave of absence, the school district shall be reimbursed by the employee organization of which the employee is an elected officer for all compensation paid the employee on account of the leave. . . .

"The leave of absence without loss of compensation provided for by this section is in addition to the released time without loss of compensation granted to representatives of an exclusive representative by subdivision (c) of Section 3543.1 of the Government Code."[5]

The Legislature's choice of the phrase "leave of absence" in section 44987(a) (rather than "leave" or "time off") arguably creates ambiguity. A leave of absence may commonly be understood to refer to a period of extended absence. However, when the words "leave of absence" are considered in the context of the full text of section 44987(a), it is apparent the Legislature intended to allow an elected officer of a local school district employee organization to take a leave of absence for any period of time for which the organization is willing to reimburse the school district.

Thus, section 44987(a), in authorizing leave "for the purpose of enabling the employee to serve as an elected officer" of the employee organization, necessarily anticipates a broad range of reasons for the employee to take a leave of absence, limited by the purpose of serving as an officer. Further, section 44987(a) provides that "[t]he leave shall include, *but is not limited to*, absence for purposes of attendance by the employee at periodic, stated, special, or regular meetings of the body of the organization on which the employee serves as an officer." This language reinforces the legislative intent to allow the employee organization to determine the purposes for which leaves of absence are required. This language also demonstrates the Legislature intended to authorize leaves of absence of short or infrequent duration, as well as leaves of absence of longer or regular duration.

---

[5]Government Code section 3543.1, subdivision (c), provides: "A reasonable number of representatives of an exclusive representative shall have the right to receive reasonable periods of released time without loss of compensation when meeting and negotiating and for the processing of grievances."

Moreover, for several reasons, the phrase "leave of absence" cannot reasonably be interpreted to refer solely to an extended period of absence. First, such an interpretation would render nugatory the provision that the leave includes, but is not limited to, attendance at meetings. Second, the standard legal dictionary definition of "leave of absence" is: "A worker's temporary absence from employment or duty with the intention to return. Salary and seniority normally are unaffected by a leave of absence."[6] A temporary absence from employment may well include a very short period of absence, or a temporary absence for a portion of every day or every week. And, third, the article of which section 44987 is a part includes other statutes authorizing leaves of absence that may reasonably include temporary, short, intermittent or regularly repeated leaves of absence, such as section 44966 (leave of absence for travel or study) and section 44987.3 (leave of absence to serve on any of several committees, councils, groups, boards or commissions).

Accordingly, if the employee organization determines its purposes require its elected officer to take a leave of absence 50 percent of the work week, section 44987(a) requires the school district employer to grant the leave request, so long as the employee organization reimburses the school district for all compensation paid to the employee during the leave of absence.

Indeed, the District concedes that a "leave of absence" can consist of either a full-time absence or "something less than a full-time absence." Nevertheless, the District contends a part-time leave of absence constitutes a "job reclassification" rather than a leave of absence. This argument is mere semantics. The Legislature has expressly authorized leaves of absence for officers to perform their union duties and to attend regular meetings of the employee organization. Consequently, if the employee organization requires an officer's presence some portion of every workday, or if the organization's regular meetings take place on workday mornings or afternoons, the District must authorize the officer's part-time leave of absence, regardless of how the District chooses to characterize the leave.

The District next contends the Association's interpretation of section 44987(a) could lead to the absurd result of a teacher working only one-half day per week, or even only one hour per week. In enacting section 44987(a), the Legislature intended to allow an employee organization to determine the reasons for which its officers must have leave to serve the organization. It is neither absurd nor unreasonable that this will result in different durations of leaves of absence in different school districts. A large school district employee organization will likely require some or all of its officers to take full

---

[6] Black's Law Dictionary (7th ed. 1999) page 901, column 2.

leaves of absence. A smaller employee organization will not necessarily need to have its officers attend to the organization's purposes on a full-time basis. Indeed, it would be unreasonable to construe section 44987(a) to require every officer of every employee organization seeking a leave of absence under the provision to take a full-time leave of absence.

The District next contends that an interpretation of section 44987(a) that permits Escobedo to take a half-time leave of absence will harm the District's bilingual students because the District cannot find a half-time bilingual replacement for Escobedo, and even if it could, the quality of the bilingual program will be reduced by having two teachers in Escobedo's classroom.

The District's hardship contention is not well-taken for two reasons. First, the Legislature must have been aware that allowing a schoolteacher to take a leave of absence to attend to union business may cause hardship to the school district and may affect the quality of teaching in the classroom. Yet, the Legislature did not include any sort of hardship exception in section 44987(a).

Second, the record does not support the contention. The District relies on the declarations of its associate superintendent of human resources and the principal of the elementary school at which Escobedo teaches that, because of a shortage of bilingual teachers, the demand for such teachers exceeds the supply, and that it would be "very difficult" to hire a part-time bilingual teacher. The District presented no evidence that it would have been impossible to have obtained a half-time bilingual teacher to share responsibilities in Escobedo's classroom. Moreover, the District ignores that Escobedo gave the District three months' notice of her request for a half-time leave of absence, prior to the start of the 2001-2002 school year, thus affording the District a considerable amount of time to seek a half-time bilingual teacher. Finally, although the District's principal declares Escobedo "did not seem interested" in the alternative option of a transfer to a nonbilingual teaching assignment, Escobedo declares she "brought up the ideas of transfers from the bilingual program into a regular classroom, [or] even to a high school Spanish teaching assignment," but the principal and associate superintendent rejected the ideas.

The District raises additional arguments without citation to the record or authority. The District asserts it would be inequitable to issue a writ because Escobedo refused to consider alternative leave arrangements and because the Association failed to respond to multiple offers to resolve the dispute in a mutually agreeable manner. The record does not support the first part of the

contention. And the implied assertion that the Association behaved inequitably by refusing to accept the District's interpretation of section 44987(a) is frivolous. The District also argues the "association leave" clause of the parties' Master Agreement provides greater benefits than section 44987(a). This is patently incorrect. The association leave provision limits the Association's president to 36 days or 180 periods of leave to attend to the Association's business, while even the District admits section 44987(a) allows the Association's president to take up to a full-time leave of absence.

## 2. *Deferral to Arbitration Is Not Required.*

The District contends the "*Collyer* doctrine" requires deferral of the dispute to the parties' contractual grievance-arbitration procedure because this case actually involves a dispute over the meaning of the "job share," "association leave" and "rights and powers" provisions of the parties' Master Agreement.[7] Not so.

The *Collyer* doctrine "advocates a species of judicial abstention when the dispute between the parties arguably falls within the contractual arbitration procedure. . . . [¶] While a similar policy in favor of arbitration has been adopted in California, ' "*there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . .*" ' [Citation.] (Italics in original.) Thus, 'an order directing arbitration should be granted "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." ' [Citations.]"[8]

The arbitration provision of the parties' Master Agreement does not cover this dispute. The Master Agreement defines a grievance as "an allegation that the District has violated this Agreement"; only a grievance may be pursued to arbitration. The Association made clear that its demand for Escobedo's leave of absence was pursuant to section 44987(a).

"The petition in this case was not an attempt to enforce compliance with the collective bargaining agreement but with the controlling statute[]. Consequently petitioner was not required to exhaust administrative remedies before seeking equitable relief in the trial court."[9]

Nor can the District be heard to claim that the "association leave" provision of the parties' Master Agreement supersedes the rights accorded

---

[7]See *Collyer Insulated Wire* (1971) 192 NLRB 837; see also *United Technologies Corp.* (1984) 268 NLRB 557.

[8]*Independent Union of Pub. Service Employees v. County of Sacramento* (1983) 147 Cal.App.3d 482, 490-491 [195 Cal.Rptr. 206].

[9]*United Teachers—L.A. v. Los Angeles Unified School Dist.* (1994) 24 Cal.App.4th 1510, 1519, footnote 4 [29 Cal.Rptr.2d 897] (*United Teachers*).

Escobedo by section 44987(a). The association leave clause provides, as relevant, for the Association's president to "have up to thirty-six (36) days or one[]hundred eighty (180) periods of leave granted for the purpose of Association business." However, section 44924 provides in pertinent part, with exceptions not here applicable, that "any contract or agreement, express or implied, made by any employee to waive the benefits of this chapter or any part thereof is null and void." The chapter referred to is chapter 4 (commencing with section 44800) of part 25 of division 3 of title 2 of the Education Code, which sets out the rights of certificated employees and includes section 44987(a). Accordingly, even assuming the association leave clause refers to the same type of leave provided by section 44987(a), the parties could not, through the Master Agreement, waive Escobedo's right to a leave of absence pursuant to section 44987(a).[10]

Finally, we reject the District's remaining contention, that it is inequitable to allow the Association to rely on section 44987(a) when the Association must have been fully aware of the section and yet negotiated the association leave provision in the parties' Master Agreement. The District too presumably was aware of both section 44987(a) and section 44924. The District thus knew, or should have known, that it could not limit its employees' section 44987(a) rights through collective bargaining negotiations.

### DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its order of August 31, 2001, denying the petition for writ of mandate, and to issue a new order granting the petition and directing the District to authorize Julie Escobedo's half-time leave of absence. The alternative writ of mandate issued by this court on October 18, 2001, having served its purpose, is discharged. Petitioner shall recover its costs of this proceeding.

Raye, J., and Callahan, J., concurred.

---

[10]See *Praiser, supra,* 87 Cal.App.4th at page 405 ("since section 44924 specifies that employees may not waive the benefits of [chapter 4], the mandatory provisions of section 44922 granting employees additional benefits prevail over conflicting regulations in the parties' collective bargaining agreement"). See also *United Teachers, supra,* 24 Cal.App.4th at pages 1517-1519.