[No. B172414. Second Dist., Div. Seven. Mar. 7, 2005.]

BONITA VEGUEZ, Plaintiff and Appellant, v.
GOVERNING BOARD OF THE LONG BEACH UNIFIED SCHOOL
DISTRICT et al., Defendants and Appellants.

408

COUNSEL

Schwartz, Steinsapir, Dohrmann & Sommers and Henry M. Willis for Plaintiff and Appellant.

Miller Brown & Dannis, Sue Ann Salmon Evans and Enrique M. Vassallo for Defendants and Appellants.

OPINION

PERLUSS, P. J.—Education Code section 44977[1] guarantees certificated public school employees up to five months of differential-pay sick leave (the certificated employee's regular salary less the amount actually paid to a substitute teacher in his or her absence) "per illness or accident" if they are unable to work for an extended period due to a medical condition and have exhausted their accumulated full-pay sick leave. Under this provision, is a teacher who is injured as the result of a series of work-related accidents, receives treatment for her injuries during a nine-month leave of absence, returns to her job, works for nearly two years without incident and then takes another medical leave for injuries related to the original accidents, entitled to a second paid statutory leave? Although a simple causal relationship, however attenuated, between the original illness or accident and a subsequent medical condition or injury does not necessarily disqualify a certificated employee from a second period of differential-pay sick leave under section 44977, when, as here, the subsequent injury was known and potentially treatable during the original medical leave, the second leave falls within that provision's "per illness or accident" limitation.

## OVERVIEW

Bonita Veguez, a certificated employee of the Long Beach Unified School District (District), began a medical leave of absence on March 12, 2002. On December 20, 2002 Veguez filed a petition for writ of mandate seeking orders directing the governing board of the District and its superintendent (a) to grant her five months of paid leave pursuant to section 44977, (b) to reinstate her as of September 4, 2002, the beginning of the 2002–2003 school year, pursuant to section 44978.1, which requires a school district to reinstate an employee who becomes medically able to return to work within the statutorily prescribed time, and (c) to make her whole for any wages and benefits she lost because the District refused to allow her to return to work once she was medically able. The trial court granted the petition in part and denied it in part.

---

[1] Statutory references are to the Education Code unless otherwise indicated.

We agree with the trial court's conclusion Veguez was ineligible for statutory differential-pay leave in 2002 because the medical condition for which she was treated at that time and the injuries for which she had been treated and received differential pay two years earlier fall within the "per illness or accident" limitation of section 44977. Accordingly, we affirm that portion of the trial court's order denying Veguez's petition for writ of mandate to compel the District to award her an additional five months of differential pay. However, Veguez demonstrated she was medically able to return to work within the time period prescribed by section 44978.1. We therefore reverse that portion of the trial court's order conditioning Veguez's reinstatement on a new medical examination by a physician selected by the District and remand for further proceedings to determine the appropriate award of backpay and benefits to which Veguez is entitled.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Veguez's 1998 Accidents*

Veguez has been employed by the District since 1972. Until 1998 she worked as a special education teacher in the school's orthopedic program, where her job duties included lifting children who needed assistance. In July 1998 and again in November 1998 Veguez suffered work-related accidents, injuring her back and both knees in each incident. Veguez did not use any sick leave as a result of the July 1998 accident but did use all of her accumulated full-pay sick leave while recovering from the injuries sustained in the November 1998 accident. She also filed workers' compensation claims in connection with both incidents.[2]

Veguez remained off work from November 1998 until May 2000. After exhausting her full-pay sick leave, Veguez requested and was granted differential-pay sick leave under section 44977 for a five-month period.[3]

---

[2] Veguez suffered other work-related injuries during her employment: On November 17, 1980 she injured her right shoulder; on July 21, 1982 she injured her left foot; on April 23, 1993 she injured her lower back and neck. In addition, she apparently injured her right knee in 1983, although it is unclear from the record whether that injury was work related.

[3] Section 44977 provides in part: "(a) During each school year, when a person employed in a position requiring certification qualifications has exhausted all available sick leave, including all accumulated sick leave, and continues to be absent from his or her duties on account of illness or accident for an additional period of five school months, whether or not the absence arises out of or in the course of the employment of the employee, the amount deducted from the salary due him or her for any of the additional five months in which the absence occurs shall not exceed the sum that is actually paid a substitute employee employed to fill his or her position during his or her absence or, if no substitute employee was employed, the amount that would have been paid to the substitute had he or she been employed. . . . [¶] (b) For purposes of subdivision (a): [¶] (1) The sick leave, including the accumulative sick leave, and the

### 2. *Treatment for the 1998 Injuries*

In 1999 Veguez underwent surgery on her right knee to ameliorate pain caused by a degenerative arthritic condition, aggravated by the injuries she sustained in the 1998 accidents. Although the 1998 accidents apparently aggravated a degenerative arthritic condition in her left knee as well, she did not have surgery or receive any treatment for her left knee during her leave of absence.

### 3. *Veguez's Subsequent Medical Leave*

Veguez returned to work in May 2000 with certain medical restrictions, which the District accommodated by reassigning her to a position as a resource specialist. Unprompted by any precipitating accident or event, the pain in Veguez's left knee began to worsen in December 2000 and increased throughout 2001. At the recommendation of her personal physician, Dr. John Santaniello, Veguez took a leave of absence from her employment in March 2002 and began receiving anti-inflammatory injection treatments for her left knee. After once again using all of her accumulated full-pay sick leave, Veguez requested differential pay under section 44977. The District denied her request on the ground the five months' statutory paid leave Veguez had received following her 1998 accident exhausted her rights under section 44977. Instead, pursuant to section 44978.1, the District placed Veguez on a 39-month reemployment list effective March 19, 2002.[4]

### 4. *Veguez's Medical Examination for Her Workers' Compensation Claims*

On August 12, 2002 Veguez was examined by Dr. Alexander Angerman, the agreed workers' compensation medical examiner (AME) in connection with her workers' compensation claims. Dr. Angerman concluded Veguez's

---

five-month period shall run consecutively. [¶] (2) An employee shall not be provided more than one five-month period per illness or accident. However, if a school year terminates before the five-month period is exhausted, the employee make take the balance of the five-month period in a subsequent school year."

[4] Section 44978.1 provides in part: "When a certificated employee has exhausted all available sick leave, including accumulated sick leave, and continues to be absent on account of illness or accident for a period beyond the five-month period provided pursuant to Section 44977, and the employee is not medically able to resume the duties of his or her position, the employee shall, if not placed in another position, be placed on a reemployment list . . . for a period of 39 months if the employee is on permanent status. When the employee is medically able, during the . . . 39-month period, the certificated employee shall be returned to employment in a position for which he or she is credentialed and qualified. The . . . 39-month period shall commence at the expiration of the five-month period provided pursuant to Section 44977."

condition was not yet "permanent and stationary" and agreed Veguez should proceed with the lumbar epidural block injections she had scheduled within the next several weeks. While suggesting that Veguez return to see him approximately two months after receiving the scheduled injections, Dr. Angerman concluded it would be reasonable for Veguez to attempt to return to the same job duties she had been performing in March 2002 "to see how she does."[5]

### 5. *The District's Denial of Reinstatement*

On August 26, 2002 Dr. Santaniello determined Veguez was ready and able to return to work and released her for "full duty" as of September 4, 2002. Nonetheless, the District refused to reinstate Veguez, asserting that, in accordance with the parties' stipulation in the workers' compensation case, the only medical opinion it could consider was that of the AME; and the AME had not formally released Veguez to return to work.

### 6. *Veguez's Petition for Writ of Mandate*

On December 20, 2002 Veguez filed a petition for writ of mandate in the trial court under Code of Civil Procedure section 1085, seeking orders directing the District to pay her five months of differential pay for her leave of absence from March through August 2002, to reinstate her to her former position and to award her backpay and other consequential damages arising from the District's refusal to reinstate her as of September 4, 2002.

The trial court denied Veguez's request for differential pay under section 44977, concluding that her left knee injury had existed in 1998 and was a product of the same 1998 accident for which she had already received differential pay. As for Veguez's request for reinstatement, the court granted the petition in part, ordering the District to appoint a physician to examine Veguez and "determine whether she is medically able to return to work in a position for which she is credentialed and qualified[:] If she is found to be eligible at the time of examination, [you (the District) are to find her] eligible as of September 4, 2002 unless the examining physician finds that she was unable to return to work until some later date. [You are] also to determine the

---

[5] Dr. Angerman had been asked to examine Veguez, order any necessary tests and prepare a narrative report addressing the following six issues: (1) Veguez's employment and medical history, her present complaints and Dr. Angerman's findings and diagnosis; (2) Dr. Angerman's opinion whether Veguez sustained the injuries claimed; (3) if so, his opinion as to "whether her condition is permanent and stationary"; (4) Dr. Angerman's opinion as to permanent partial disability and apportionment; (5) Dr. Angerman's recommendation for further medical treatment; and (6) Dr. Angerman's "opinion as to whether the patient could successfully return to her former job if it were available."

amount of back pay due petitioner from the date upon which [you] determine that she was entitled to be re-employed."

Both the District and Veguez have filed timely appeals from the judgment.

## CONTENTIONS

The District contends: (1) the action is barred because Veguez did not exhaust the internal grievance procedures in the collective bargaining agreement governing the terms of her employment; (2) the action is subject to workers' compensation preemption; (3) the District did not violate section 44978.1 in refusing to reinstate Veguez because only the AME had the authority to certify her as medically able to return to work and he did not certify her return; and (4) Veguez failed to demonstrate that a position for which she was credentialed and qualified was available in September 2002.

Veguez contends the court erred in denying her claim for differential pay under section 44977 and ordering her to submit to another medical examination as a prerequisite for reinstatement.

## DISCUSSION

### 1. *Standard of Review*

■ A traditional writ of mandate lies "to compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded . . . ." (Code Civ. Proc., § 1085, subd. (a); see also *Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 539–540 [28 Cal.Rptr.2d 617, 869 P.2d 1142].) In reviewing the trial court's ruling on a writ of mandate under Code of Civil Procedure section 1085, the Court of Appeal considers whether the findings and judgment are supported by substantial evidence. (*Caloca v. County of San Diego* (1999) 72 Cal.App.4th 1209, 1217 [85 Cal.Rptr.2d 660].) However, when the facts are undisputed and the issue turns on statutory interpretation, appellate review is de novo. (*Ibid.*; *Dolan-King v. Rancho Santa Fe Assn.* (2000) 81 Cal.App.4th 965, 973–974 [97 Cal.Rptr.2d 280].)

### 2. *Governing Law*

■ Full-time certificated employees in the California public school system are entitled to 10 days of full-pay sick leave each year for "illness or injury." (§ 44987.) If the employee does not use the full amount of full-pay

leave in any school year, the leave may be accumulated "year to year." (§ 44987.) Once accumulated full-pay sick leave is exhausted, certificated employees are statutorily entitled to an additional five months of differential pay, the difference between the certificated employee's regular salary and the amount actually paid to a substitute teacher in his or her absence. (§ 44977, subd. (a).) The five-month statutory leave may extend over more than one school year, but the employee is limited to one five-month period "per illness or accident." (§ 44977, subd. (b)(2).)

Prior to 1998 former section 44977 provided that certificated employees absent from their duties because of illness or accident for a period of five months or less were entitled to collect during that period their regular salary, less the sum actually paid to substitute teachers filling their positions or, if no substitute was employed, the amount that would have been paid to the substitute if one had been employed. (Stats. 1976, ch. 1010, § 2, p. 3457.) The statute did not expressly limit the number of times a certificated employee could assert his or her right to a differential-pay leave, either in the same or subsequent years, leaving unresolved the question whether the differential-pay benefit was "available once in the teacher's career . . . or whether the five-school-month period [was] automatically renewed every school year or only by some other intervening event, such as the onset of a different illness or accident . . . ." (*California Teachers' Assn. v. Governing Board* (1983) 145 Cal.App.3d 735, 741 [193 Cal.Rptr. 650].) The few cases that had addressed the issue suggested former section 44977 authorized a renewed differential-pay benefit each school year even if the need for medical leave was caused by the same illness or accident for which the teacher had already received five months of differential pay. (*Ibid.*; see also *Jefferson Classroom Teachers Assn. v. Jefferson Elementary School Dist.* (1982) 137 Cal.App.3d 993, 999 [187 Cal.Rptr. 542] [indicating, without deciding, that an additional differential-pay benefit was available each year for any illness or injury even if it was to be utilized as a result of an illness or injury for which the employee had previously received differential pay].)

Former section 44977 was also silent on the question whether its five-month minimum pay guaranty ran concurrently with the employee's full-pay sick leave benefits or if it commenced only after the employee had exhausted his or her full-pay sick leave.

In 1998 the Legislature amended section 44977 to address those questions. (Stats. 1998, ch. 30, § 1.) The amendments adopted were recognized as a compromise between school districts, which sought to limit the differential-pay benefit provided, and the teachers' unions, which sought the broadest possible benefit for its members. (See Sen. Com. on Education, Analysis of

Sen. Bill No. 1019 (1997–1998 Reg. Sess.) as amended Jan. 5, 1998 [bill is "a tradeoff between competing issues of importance to management and labor in the public schools"].)

■ As amended, section 44977 authorizes the differential-pay benefit to be applied consecutively to the employee's use of accumulated full-pay sick leave, thus guaranteeing the certified employee the longest possible compensated leave time. (§ 44977, subd. (b)(1).)[6] On the other hand, the 1998 amendments also expressly limited the total differential pay available in any one school year to five months and restricted an employee to one differential-pay period "per illness or accident," confirming that the benefit could be available more than once in a teacher's career but nonetheless narrowing the circumstances under which employees could obtain differential pay.[7] Finally, the Legislature also enacted section 44978.1, requiring school districts to place an employee who has exhausted both full-pay sick leave and differential-pay leave and is still unable to return to work on a reemployment list for a prescribed period of time (24 months for probationary employees, 39 months for permanent employees) and to return the employee to a position for which he or she is credentialed and qualified if the employee becomes medically able to return to work within the prescribed time period.

### 3. Veguez Was Not Required to Exhaust the Internal Grievance Procedures in the Collective Bargaining Agreement

Under the heading "Statutory Sick Leave" the collective bargaining agreement between the District and the Teachers' Association of Long Beach, Veguez's bargaining representative, provides for a differential-pay benefit substantially similar to that contained in section 44977. The collective bargaining agreement further requires a teacher challenging either the "interpretation or application" of the agreement or claiming a "violation" of the agreement to follow a series of prescribed internal grievance procedures, culminating in binding arbitration.

■ The District contends that, because Veguez's claim for differential pay falls within the terms of her collective bargaining agreement, her failure to

---

[6] See Senate Committee on Education, Analysis of Senate Bill No. 1019 (1997–1998 Reg. Sess.) as amended January 5, 1998, page 3 (by specifying that "differential pay must follow consecutively after an employee has exhausted his or her available sick leave[, the bill] creates a uniform application of the law and eliminates the disadvantage that arises for employees who use up a large amount of accumulated sick leave during a serious illness or following an accident, and never get to benefit from the availability of the differential pay leave, should they continue to be medically unable to return to work"). (Underscoring omitted.)

[7] If the school year ends before an employee's five-month differential-pay benefit is exhausted, the employee may take the balance of the five-month period in a subsequent school year. (§ 44977, subd. (b)(2).)

exhaust the internal grievance procedures set forth in that agreement bars her petition for writ of mandate. However, Veguez challenges neither the District's interpretation nor its application of her collective bargaining agreement, but rather its denial of her rights under section 44977. Lawsuits to enforce rights guaranteed by the Education Code are not subject to internal exhaustion requirements. (*Tracy Educators Assn. v. Superior Court* (2002) 96 Cal.App.4th 530, 537–538 [116 Cal.Rptr.2d 916] (*Tracy*); *United Teachers—L.A. v. Los Angeles Unified School Dist.* (1994) 24 Cal.App.4th 1510, 1519–1520 [29 Cal.Rptr.2d 897] (*United Teachers*); see §§ 44924 ["[e]xcept as provided in Sections 44937 [right to dismissal hearing] & 44956 [rights of terminated employee], any contract or agreement, express or implied, made by any employee to waive the benefits of this chapter or any part thereof is null and void"].)

The District argues *Tracy* and *United Teachers* involved collective bargaining agreements that narrowed the teachers' statutory rights and asserts that when the collective bargaining agreement is identical to the provisions of the Education Code, the employee has effectively bargained for a different forum to resolve the statutory issues. Contrary to the District's contention, however, the method for calculating an employee's differential-pay benefit set forth in the collective bargaining agreement governing Veguez's employment differs from the calculation required by section 44977 by guaranteeing the teacher one-half of his or her regular salary without regard to the actual cost of a substitute teacher. Veguez's petition for writ of mandate does not seek the benefit provided by the collective bargaining agreement, but the differential salary prescribed under section 44977. Under these circumstances Veguez had no duty to exhaust internal grievance procedures before seeking a writ of mandate under Code of Civil Procedure section 1085. (*Tracy, supra,* 96 Cal.App.4th at pp. 537–538; *United Teachers, supra,* 24 Cal.App.4th at pp. 1519–1520.)[8]

### 4. *Veguez's Action Is Not Preempted by the Workers' Compensation Law*

The District also insists Veguez's claim is barred by the exclusivity provisions of the workers' compensation law. (See Lab. Code, § 3600,

---

[8] Even if the collective bargaining agreement were identical to the statutory provisions of section 44977, we are not convinced Veguez would be required to exhaust internal grievance procedures before filing a lawsuit to enforce her statutory rights. (See, e.g., *Tracy, supra,* 96 Cal.App.4th at p. 538 [although the collective bargaining agreement requires a grievance to be submitted to arbitration, petition for writ of mandate is to enforce § 44987, subd. (a), not the collective bargaining agreement]; cf. *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1088–1091 [6 Cal.Rptr.3d 457, 79 P.3d 569] [city employee need not exhaust additional internal grievance procedures in addition to satisfying administrative exhaustion requirement set forth in the Fair Employment and Housing Act].) However, resolution of that question can await another day.

subd. (a) ["Liability for the compensation provided by this division, in lieu of any other liability whatsoever . . . , shall . . . exist against an employer for any injury sustained by his or her employees arising out of and in the course of employment . . . ."].) While common law tort claims are generally preempted (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 16 [276 Cal.Rptr. 303, 801 P.2d 1054]), claims for separate injuries under distinct statutory schemes are not. (See *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1153–1155 [77 Cal.Rptr.2d 445, 959 P.2d 752] [employee's statutory claims for discrimination under either the Fair Employment and Housing Act or Lab. Code § 132a not preempted by workers' compensation exclusivity]; *Pearl v. Workers' Comp. Appeals Bd.* (2001) 26 Cal.4th 189, 197 [109 Cal.Rptr.2d 308, 26 P.3d 1044] [state employee's lawsuit for retirement disability benefits not preempted: "Although both the Public Employees' Retirement Law and the workers' compensation law are aimed at the same general goals with regard to the welfare of employees and their dependents, they represent distinct legislative schemes. We may not assume that the provisions of one apply to the other absent a clear indication from the Legislature"].) Veguez seeks differential pay and reinstatement under sections 44977 and 44978.1, not tort damages for her work-related injury. Accordingly, the trial court properly held her claims were not preempted by the exclusivity provisions of the workers' compensation law.

> 5. *The Trial Court Properly Denied Veguez's Petition for Differential Pay*

Veguez insists she was eligible for additional differential-pay benefits while on medical leave in 2002 to treat her left knee pain because the injuries to both her knees were the result of the cumulative trauma from a series of accidents, not a single, distinct incident, and the injury to her left knee is separate from the earlier injury to her right knee. To support her position that her 2002 medical leave is not subject to the "per illness or accident" limitation of section 44977, Veguez relies on the report of Dr. Santaniello, who opined that the "right and left knee problems" are distinct, the right knee problem "preceded the left knee by several years in its onset and severity," the "right knee problem was more advanced" than the left knee when he initially saw Veguez after her accidents in 1998 and the "left knee problem did not become significant clinically until the end of 2000."

Section 44977, however, limits the availability of differential-pay benefits not in terms of severable "injuries," but rather in terms of a distinct "illness or accident." A teacher who suffers multiple injuries in a single accident is entitled to only one differential-pay period for that accident. The question in this case, therefore, is not whether the injuries Veguez sustained to her knees in 1998 were different in degree and severity—plainly they

were—but whether the left knee injury for which Veguez currently seeks differential pay is a product of the same "illness or accident" for which she received differential pay in 1999 within the meaning of those terms in section 44977.

Veguez first suggests that, because she returned to work in 2000 and continued in her job until 2002, any subsequent treatment for her left knee must be considered a "new illness" as a matter of law. Relying on legislative history indicating the 1998 amendments were designed in part to curb abuses by teachers who continued to accumulate sick leave without ever intending to return to work (see Sen. Com. on Education, Analysis of Sen. Bill No. 1019 (1997–1998 Reg. Sess.) as amended Jan. 5, 1998 [bill allows "management . . . to remedy the potential for abuse by employees who manipulate the system and never intend to return to work"]), Veguez contends the phrase "per illness or accident" must be interpreted to mean each injury or condition that temporarily incapacitates an employee and prevents her from being able to fulfill her job duties. Once the employee returns to work, the incapacitating "illness or accident" has effectively concluded; and any subsequent medical condition, whether or not related to the prior illness or accident, triggers the employee's right to an additional five-month period of differential pay.

The ascertainment of legislative intent is the paramount principle of statutory interpretation. (*Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 783 [11 Cal.Rptr.3d 222, 86 P.3d 290]; *In re Michael G.* (1988) 44 Cal.3d 283, 289 [243 Cal.Rptr. 224, 747 P.2d 1152].) We begin, of course, with the actual language of the statute. (*In re Michael G.*, at p. 289.) Because the terms "illness or accident," undefined in this statute, may be subject to different interpretations, however, we agree resort to legislative history is appropriate to help determine the Legislature's intent. (See *People v. Birkett* (1999) 21 Cal.4th 226, 231–232 [87 Cal.Rptr.2d 205, 980 P.2d 912] [the plain language of the statute controls; if however, the statutory language "leaves doubt about its meaning, we may consult other evidence of the Legislature's intent, such as the history and background" of the legislation]; *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

The pertinent legislative history does not support Veguez's interpretation of section 44977. As we have explained, section 44977 was amended in 1998 in an effort to address concerns by the teachers' unions over the districts' application of the differential-pay benefit concurrently with the employee's utilization of accumulated full-pay sick leave, thereby depriving many teachers of the value of the statutory leave provision, while also meeting some school districts' goals of limiting the total amount of available leave time. If anything, the legislative history indicates a desire to narrow the circumstances under which a certificated employee may obtain differential-pay leave by

limiting the employee to one differential-leave period "per illness or accident" as well as one leave period per school year regardless of the cause for the leave. Nothing in the legislative history remotely suggests an intent to create a temporal definition to the terms "illness" or "accident," allowing a renewal of a differential-pay benefit following the employee's return to work.[9]

Veguez further argues her knee problems were caused by a series of accidents (two or more) and she is therefore entitled to a separate period of differential leave for each accident that contributed to her injuries. Veguez insists the Legislature's use of the term "per accident" in the 1998 amendments to limit additional periods of differential pay means a teacher injured by multiple accidents may claim an equal number of periods of differential pay.

Veguez's application of this novel construction of section 44977 to her situation ignores the fact that the damage to her knees was cumulative and that it was only after the last accident occurred in November 1998 that she took any medical leave at all. While prior incidents may have contributed to some degree to her general medical condition, because there was no further accident causing any injury to Veguez's right knee following her return to work in May 2000, the medical leave Veguez took in 2002, like her earlier medical leave, was necessarily the product of the November 1998 accident for purposes of section 44977. Any other interpretation of the "per accident" limitation would produce absurd consequences, plainly at odds with the intent of the 1998 amendments: For example, if Veguez were correct, a teacher who repeatedly fell (say, on 10 occasions) without serious injury but who finally sought medical treatment would be entitled to 10 five-month differential-pay periods, whether or not she had suffered more than one discrete injury and whether or not she ever returned to work. Nothing in the language or legislative history of the 1998 amendments to section 44977 requires us to reach that result. (See *Bruce v. Gregory* (1967) 65 Cal.2d 666, 673 [56 Cal.Rptr. 265, 423 P.2d 193] ["It is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend."].)

---

[9] Far from clarifying the legislation, Veguez's suggested interpretation of section 44977, unsupported by either the plain language of section 44977 or the legislative history, invites more questions: For example, for how long must an employee work after his or her return before a subsequent leave could be considered a "different" illness for purposes of obtaining differential pay? Is it a matter of only days, weeks, months? Any judicial answer to these questions would necessarily rest on speculation and conjecture, neither of which is a proper basis for statutory interpretation. (See *Mutual Life Ins. Co. v. City of Los Angeles* (1990) 50 Cal.3d 402, 412 [267 Cal.Rptr. 589, 787 P.2d 996] [" ' "courts may not speculate that the legislature meant something other than what it said[,] [n]or may they rewrite a statute to make it express an intention not expressed therein." ' "].)

Finally, Veguez argues, as a factual matter, her left knee condition must be considered a separate illness because it did not exist in 1998, at least to the same degree it existed in 2002 when she took her second leave of absence. Veguez's position is plainly inconsistent with her own concession that the pain in her left knee is directly attributable to the 1998 accidents. Nonetheless, she insists her left knee did not require treatment in 1998 or 1999 and for that reason must be considered a "new illness" even if it is a product of the same accident. She urges that the fact an injury or other medical condition may relate to a prior accident does not necessarily disqualify it as a new "illness or accident" for purposes of qualifying for differential pay under section 44977.

■ Considered in the abstract, without regard to the facts in the record before us, Veguez's argument has merit. Section 44977 does not necessarily preclude a second period of differential pay for a new medical leave simply because the teacher's current illness relates in some way to a prior accident. A serious accident could not only cause immediate injury but also create a predisposition for, or serve as a causative element of, an illness that does not manifest itself until months or even years after the employee has apparently recovered from the accident and successfully returned to work. For example, a head injury sustained in an accident may bear some relationship to a stroke suffered years later. It can hardly be said, however, that the stroke itself is an injury suffered in the initial accident.

On the other hand, an injury that is the immediate byproduct of an accident does not become new or different simply because treatment has been postponed or because the condition has deteriorated over time. It would, without question, defeat the plain language of the "per accident" limitation if an employee were allowed to obtain more than one differential-pay benefit in those circumstances.

■ Because neither party obtained a statement of decision, all intendments favor the ruling below; and we must infer every finding of fact supporting the judgment so long as it is warranted by the evidence. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 [275 Cal.Rptr. 797, 800 P.2d 1227]; *Walling v. Kimball* (1941) 17 Cal.2d 364, 373 [110 P.2d 58]; *Homestead Supplies, Inc. v. Executive Life Ins. Co.* (1978) 81 Cal.App.3d 978, 984 [147 Cal.Rptr. 22].) Here, Veguez suffered two work-related accidents in 1998, injuring both knees on each occasion. Her own physician found the injuries had aggravated a preexisting degenerative arthritic condition in both knees. According to Dr. Angerman's report, surgery on her left knee was recommended in 1999 (in conjunction with her right knee condition) but Veguez elected not to have surgery or obtain any treatment for her left knee at that time. Although Dr. Santaniello reports that the left knee did

not become "clinically significant" until 2002, nothing in his report negates the fact that Veguez's degenerative left knee condition, aggravated by the 1998 accidents, existed and could have been treated in 1999.

 Our task, of course, is not to resolve any conflicts in the evidence, but to determine if the judgment is supported by substantial evidence. (*Gananian v. Zolin* (1995) 33 Cal.App.4th 634, 638 [39 Cal.Rptr.2d 384] [" 'Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's. [Citation.] We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings. [Citation.]' "].) Dr. Angerman's report, as well as Veguez's own deposition testimony, directly attribute Veguez's left knee problems in 2002 to the 1998 accidents and the attendant aggravation of her preexisting degenerative condition. That evidence amply supports the trial court's conclusion that Veguez's 2002 medical leave to treat her left knee pain fell within the "per illness or accident" limitations of section 44977. Accordingly, we find no error in the trial court's conclusion that Veguez was statutorily ineligible for additional differential pay.

6. *The Trial Court Erred in Ordering a New Medical Examination as a Prerequisite to Veguez's Reinstatement*

In response to Veguez's request for an order mandating her reinstatement under section 44978.1 as of September 4, 2002, the date her personal physician had determined she was medically able to return to work, the trial court ordered the District to appoint its own physician to examine Veguez and decide if September 4, 2002 or some later date was the proper reinstatement date (and the date from which to calculate the amount of backpay and other benefits to which Veguez was entitled).

The District contends it had no obligation to reinstate Veguez, either as of September 4, 2002 or a different, later date, absent a formal release by the AME. The District argues it would put school districts in an untenable position if they were required to distinguish between an AME report that prohibits an employee from returning to work and another medical report that certifies the employee as medically fit to return. The purpose of an AME, it insists, is to avoid inconsistent interpretations of an employee's medical ability to perform his or her job duties.

The trial court properly rejected the District's argument, finding that Veguez's stipulation to an AME for purposes of determining whether her condition was "permanent or stationary" related only to her entitlement to benefits under the workers' compensation laws. Nothing in section 44978.1

mandates that the physician authorizing a certificated employee's return to work following a medical leave be the same physician used by the parties in connection with the employee's workers' compensation claim.

In reaching this conclusion, we need not resolve the hypothetical conflict raised by the District between an AME and an employee's personal physician because the AME in this case did not dispute Veguez's fitness to return to work: He expressly stated in his report it would be reasonable for Veguez to return to her former position following scheduled epidural block injections "to see how she does." Furthermore, if the District had had any legitimate doubt about Veguez's ability to return, it arguably could have required her to submit to a medical examination by a District physician.[10] It did not. To the contrary, after initially informing Veguez that she could return to work only after submitting to a medical examination by a District physician, the District cancelled the appointment Veguez had scheduled, resting its decision to refuse reinstatement on the absence of an express release by the AME.

The District urges that Veguez presented no evidence that a position for which she is credentialed and qualified is available. However, section 44978.1 does not condition reinstatement on the availability of a position; it requires reinstatement once an employee is medically able to return to work: "When the employee is medically able, during the 24- or 39-month period, the certificated employee shall be returned to employment in a position for which he or she is credentialed and qualified." Section 44978.1's guaranty of a right to reinstatement within the prescribed time period would be illusory if the District could deny reinstatement on the ground an appropriate position is not available.

For her part, Veguez challenges the conditional nature of the trial court's reinstatement order, which requires a further examination by a District-appointed physician who is authorized to modify the tentative September 4, 2002 reinstatement date. By this order, it appears the trial court was trying to return both Veguez and the District to their respective positions as of September 2002, when Veguez first requested reinstatement and had made an

---

[10] Article VII, section C, subsection 3 (f), of the collective bargaining agreement provides: "When the District determines that an employee's health condition may be impairing job performance, Human Resource Services shall have authority to direct the employee to have a medical examination by the district physician, by a District-appointed physician at District expense, or by an employee-selected physician approved by the district physician and to be paid by the employee." Although the District now suggests this provision applies only to certificated employees who are still teaching, not those on medical leave who seek reinstatement at the time Veguez initially applied for reinstatement the District insisted she be examined by a District physician to determine her eligibility to return to work. Veguez acknowledges the District had the right to condition her return to work on an examination by a District-appointed physician.

appointment with a District physician. But, as both the District and Veguez agree (for different reasons, of course), there is simply no authority for conditioning the reinstatement order on yet another examination. The evidence concerning Veguez's medical ability to return to work as of September 4, 2002 was presented and established at trial. Nothing in either section 44978.1 or the collective bargaining agreement permits the District yet another opportunity, two and one-half years after the fact, to challenge the undisputed evidence that Veguez was medically able to return to work on September 4, 2002.

## DISPOSITION

The judgment is reversed. The case is remanded with directions to the trial court to vacate its prior writ of mandate conditioning Veguez's reinstatement on a new medical examination by a District physician, to issue a new writ of mandate directing Veguez's reinstatement as of September 4, 2002, and to conduct further proceedings not inconsistent with this opinion to determine the appropriate amount of backpay and benefits to which Veguez is entitled. The parties are to bear their own costs on appeal.

Johnson, J., and Zelon, J., concurred.