[No. A112311. First Dist., Div. One. Aug. 23, 2006.]

CALIFORNIA CORRECTIONAL PEACE OFFICERS ASSOCIATION,
Plaintiff and Appellant, v.
STATE OF CALIFORNIA et al., Defendants and Respondents.

200

COUNSEL

Carroll, Burdick & McDonough, Ronald Yank, Gregg McLean Adam; Benjamin C. Sybesma and Christine Albertine for Plaintiff and Appellant.

K. William Curtis, Warren C. Stracener, Wendi L. Ross and Ronald R. Pearson for Defendants and Respondents.

OPINION

**MARGULIES, J.**—In this appeal, we consider whether a party opposing a petition to compel arbitration may defeat the petition by demonstrating that the relief sought by the petitioner in arbitration is precluded by statute. Plaintiff California Correctional Peace Officers' Association (the Union) represents both rank-and-file correctional officers and their supervisors. Supervisors and rank-and-file officers negotiate separately with the state's representative, the California Department of Personnel Administration (the Department), over their respective terms and conditions of employment. Nonetheless, pursuant to "ground rules" negotiated between the Union and the Department, for several years supervisory employees had been permitted to sit in as observers during labor negotiations between the Department and rank-and-file employees, and vice versa. After two occasions on which rank-and-file observers disrupted negotiations between the Department and supervisory employees, the Department refused to continue with the practice. The Union sought to arbitrate its right to have observers present. When the Department refused to arbitrate, the Union filed a petition to compel arbitration.

The Department opposed the Union's petition to compel largely on the basis of Government Code section 3529, which states that supervisory employees "shall not participate in meet and confer sessions on behalf of" rank-and-file employees, and vice versa. The Department argued that section 3529 precluded the presence of observers as a matter of law, superseding anything to the contrary in the negotiated ground rules. The Department further contended that it should not be required to arbitrate this issue of statutory interpretation on the ground that only courts, not arbitrators, are permitted to interpret statutes. The trial court accepted the Department's argument and denied the Union's petition. Finding no authority for the Department's contention that arbitrators are not permitted to interpret statutes, we reverse and remand for arbitration.

## I. BACKGROUND

The Union is the exclusive representative for approximately 31,000 rank-and-file correctional officers employed by the state. The Union also represents the correctional officers who are employed as supervisors of these rank-and-file officers.[1] The Department, an agency of the state, is the designated representative of the state in dealing with these employees. The Department's duties include meeting and bargaining with the correctional officers and the Union.

Although supervisors and rank-and-file officers engage in separate negotiations with the Department, the Union alleges that since 1991 representatives of the supervisors have been allowed to observe bargaining sessions between the Department and rank-and-file officers. As one supervisor, who served as the lead negotiator for supervisory officers during bargaining in June 2004, described the process, "Negotiations with respect to supervisory issues effectively shadowed rank-and-file negotiations. Your Declarant and others on our supervisory team would sit in the same room while rank-and-file negotiations were ongoing, and then take our place at the bargaining table to discuss supervisory issues."

Beginning in March 2005, the Department took the position that it would no longer permit supervisory officers to observe negotiations with rank-and-file officers, and vice versa. In March and April 2005, representatives of the Department twice abandoned negotiations with rank-and-file representatives because supervisory personnel, present as observers, refused to leave the room in which the negotiations were to be conducted. The first aborted negotiation involved the state's plan to convert two Youth Conservation Camps, under the authority of the California Youth Authority (now known as the California Division of Juvenile Justice), into California Department of Corrections camps. The second negotiation involved the state's plans for implementing the terms of a consent decree at two youth detention facilities. In a declaration filed with the trial court, a Department negotiator explained that the change in position came about after two occasions on which rank-and-file employees who were allowed to observe supervisor negotiations failed to restrict their activities to observation. As the negotiator stated with respect to one of the rank-and-file observers, he "repeatedly disrupt[ed] the negotiation process and interject[ed] himself into the parties' discussions."

---

[1] Government Code section 3513, subdivision (c) excludes supervisory employees from collective bargaining rights granted under the Ralph C. Dills Act (Gov. Code, §§ 3512–3524), which generally governs relations between the state and its employees. Supervisors nonetheless have limited rights of representation under the Bill of Rights for State Excluded Employees (Gov. Code, §§ 3525–3539.5). (See Gov. Code, §§ 3530, 3533.)

Two agreements between the parties are relevant to this issue. First, the Department and the Union operate under written ground rules that govern the conduct of their negotiations. Under the ground rules in effect from 1996 through 2000, observers were allowed to attend bargaining sessions "by mutual agreement only." In April 2001, however, the parties negotiated a new set of ground rules, one of which states that "[w]ith prior notice, observers may attend negotiation sessions." On each of the two occasions in 2005, when Department negotiators had refused to proceed in the presence of supervisory observers, the Union had given prior notice of the observers' presence, consistent with the 2001 ground rules.

Also relevant is the primary agreement governing relations between the state and rank-and-file correctional officers, a memorandum of understanding (MOU) entered into on July 1, 2001 by the Union and the state. Of particular importance is section 27.01, entitled "Entire Agreement." The first portion of section 27.01 is a standard integration clause, stating that the MOU constitutes "the full and entire understanding of the parties regarding the matters contained herein" and supersedes any prior agreements. Pursuant to this portion of section 27.01, each party "voluntarily waives its rights to negotiate with respect to any matter raised in negotiations or covered in this Agreement." The second portion of the clause recognizes that, following execution of the MOU, the state may elect to make changes in the working conditions of correctional officers with respect to matters not expressly covered in the MOU. In that event, subdivision B of section 27.01 requires the parties to negotiate with respect to the impact of those changes if (1) the changes would affect the working conditions of a significant number of employees, (2) the subject matter of the changes is within the scope of the Union's representation, and (3) the Union requests negotiation. If the parties reach agreement in the course of such negotiations, section 27.01 requires the agreement to be put in writing and provides that the writing "shall become an addendum to [the MOU]." The MOU also contains a complex grievance resolution procedure that allows binding arbitration of "grievances which involve the interpretation, application or enforcement of the provisions of this MOU."[2]

Contending that the Department's refusal to conduct negotiations in the presence of observers violated the parties' agreements, the Union served

---

[2] Article VI of the MOU addresses the resolution of grievances, defined generally as disputes between an individual worker or a group of workers and the state. Resolution of grievances starts with informal discussion (MOU, § 6.07) and proceeds through three possible levels of internal appeal (MOU, §§ 6.08–6.10). Access to arbitration to resolve grievances is governed by section 6.11A of the MOU, which states that "[o]nly grievances which involve the interpretation, application or enforcement of the provisions of this MOU may be appealed to binding arbitration." The remaining subdivisions of section 6.11 govern the timing and manner of invoking arbitration, while subsequent sections discuss the selection of arbitrators, provide a procedure for "mini-arb," allocate costs, and ensure implementation of an arbitrator's decision.

grievances with respect to both of the abandoned negotiations, including demands to arbitrate the disputes under the MOU. The Department refused to proceed with arbitration, arguing that (1) the dispute was "not arbitral"; and (2) permitting supervisors to observe rank-and-file negotiations, and vice versa, would violate California law.

The Union responded by filing this petition to compel arbitration. The Department's opposition to the petition was premised on Government Code section 3529, subdivision (c), which states: "Excluded employees [i.e., supervisors] shall not participate in meet and confer sessions on behalf of nonexcluded employees [i.e., rank-and-file]. Nonexcluded employees shall not participate in meet and confer sessions on behalf of supervisory employees." This statute, the Department argued, prohibits supervisory employees from observing bargaining sessions of rank-and-file employees, superseding any inconsistent language in the MOU or the ground rules. From this premise, the Department argued that the petition to compel arbitration should be denied because courts have exclusive power to interpret and apply state statutes. Alternatively, the Department contended that the MOU did not require arbitration of this particular dispute.

The trial court denied the petition to compel arbitration, holding that (1) Government Code section 3529, subdivision (c) governed the parties' dispute; (2) the statute "must be interpreted by the courts and not an arbitrator"; and (3) "the parties could not and did not negotiate any terms in the current [MOU] that serves [sic] to supercede the provisions" of section 3529, subdivision (c).

## II. DISCUSSION

When, as here, no conflicting extrinsic evidence is introduced to aid the interpretation of an agreement to arbitrate, the Court of Appeal reviews de novo a trial court's ruling on a petition to compel arbitration. (*Hartnell Community College Dist. v. Superior Court* (2004) 124 Cal.App.4th 1443, 1448–1449 [22 Cal.Rptr.3d 410].)

■ Petitions to compel arbitration are governed by Code of Civil Procedure section 1281.2, which states in relevant part that "the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) [t]he right to compel arbitration has been waived by the petitioner; or [¶] (b) [g]rounds exist for the revocation of the agreement." Accordingly, in ruling on a petition to compel, the court must determine whether the parties entered into an enforceable agreement to arbitrate that reaches the dispute in question, construing the agreement to the limited extent

necessary to make this determination. (*Fittante v. Palm Springs Motors, Inc.* (2003) 105 Cal.App.4th 708, 713 [129 Cal.Rptr.2d 659].) If such an agreement exists, the court must order the parties to arbitration unless arbitration has been waived or grounds exist to revoke the agreement. (*Valsan Partners Limited Partnership v. Calcor Space Facility, Inc.* (1994) 25 Cal.App.4th 809, 817 [30 Cal.Rptr.2d 785].) Section 1281.2 expressly forbids the court from reaching the merits of the parties' dispute, instructing that "[i]f the court determines that a written agreement to arbitrate a controversy exists, an order to arbitrate such controversy may not be refused on the ground that the petitioner's contentions lack substantive merit."

Doubts are resolved in favor of arbitration. "In determining whether a matter is subject to arbitration, courts apply the presumption in favor of arbitration [citation] . . . . ' "Doubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration. The court should order them to arbitrate unless it is clear that the arbitration clause cannot be interpreted to cover the dispute." ' [Citation.]" (*Amalgamated Transit Union Local 1277 v. Los Angeles County Metropolitan Transportation Authority* (2003) 107 Cal.App.4th 673, 684–685 [132 Cal.Rptr.2d 207].)

A. *The Parties' Agreement to Arbitrate*

The arbitration clause of the MOU states that "grievances which involve the interpretation, application or enforcement of the provisions of this MOU may be appealed to binding arbitration." We agree with the Union that the arbitration clause reaches the parties' dispute because the Union's grievances seek enforcement of the provisions of the MOU.

As noted above, section 27.01B of the MOU requires the state to negotiate with respect to post-MOU changes in the working conditions of correctional officers if the changes would affect the working conditions of a significant number of employees, the subject matter of the changes is within the scope of the Union's representation, and the Union requests negotiation. The Department does not argue that the two negotiations it abandoned failed to satisfy these criteria. Indeed, by raising no objection to the occurrence of the negotiations (other than the presence of observers), the Department implicitly acknowledged that the proposed changes were proper subjects of negotiation under section 27.01B. The Union's grievances over the Department's refusal to proceed with negotiations on these two subjects therefore constituted an

attempt to enforce the state's obligations under the MOU, bringing the grievance squarely within the arbitration clause.[3]

In resisting arbitration, the Department argues that "[n]owhere in the . . . MOU do the parties discuss supervisors attending meet-and-confer sessions for rank-and-file employees. Therefore, this issue is not subject to the contractual grievance process as set forth in the MOU." This argument is premised on an impermissibly narrow interpretation of the MOU's arbitration clause, particularly in light of our obligation to construe the clause broadly in favor of arbitration. (E.g., *Amalgamated Transit Union Local 1277 v. Los Angeles County Metropolitan Transportation Authority, supra,* 107 Cal.App.4th at pp. 684–685 [arbitration is required unless " ' "it is clear that the arbitration clause cannot be interpreted to cover the dispute" ' "].) There is nothing in the arbitration clause that requires a topic to be expressly mentioned in the MOU in order to qualify for arbitration. Rather, the arbitration clause broadly permits arbitration of "grievances which involve the interpretation, application or enforcement" of the MOU. For the reasons discussed above, the Union's grievances sought to enforce the state's obligation to negotiate under section 27.01 of the MOU. The Department is, of course, free to raise with the arbitrator the issue of the Union's insistence on observers to explain its refusal to comply with the obligation to negotiate.[4]

The Department's only other argument regarding the scope of the arbitration clause is the claim that the ground rules were not intended as an exception to the prohibitions in Government Code section 3529, subdivision (c). In this context, the argument is nothing more than a claim that the dispute should not be submitted to arbitration because the Union's position lacks merit. Under the express terms of Code of Civil Procedure section 1281.2, such an argument is not a proper basis for a court's refusal to compel arbitration.[5]

---

[3] Even if the Department did not consider these changes to be proper subjects of negotiation under section 27.01B of the MOU, the section contains a provision stating that "[i]f the parties are in disagreement as to whether a proposed change is subject to this subsection, such disagreement may be submitted to the arbitration procedure for resolution." Either way, the Union was entitled to submit to arbitration the Department's refusal to participate in these negotiations.

[4] The MOU also contains a "sideletter" that incorporates certain ancillary agreements into the MOU. The Union argues that the ground rules are enforceable by arbitration under the MOU because they constitute such an ancillary agreement. Because we find sufficient justification for compelling arbitration in the Department's refusal to negotiate, it is unnecessary for us to reach this issue.

[5] In a petition for rehearing, the Department argues for the first time that the proposed arbitration should not be allowed because it will require the arbitrator to rule on the employment rights of the supervisors, who are not parties to the MOU and whose bargaining rights are exclusively statutory. (See fn. 1, ante.) This argument misunderstands the basis for the Union's grievances, which were filed on behalf of the rank and file under the MOU. The

B. *The Right to Judicial Interpretation of Statutes*

Because the Union and the state entered into an agreement to arbitrate that covers this dispute, the trial court was required, under Code of Civil Procedure section 1281.2, to grant the petition to compel arbitration unless the Union had waived arbitration or grounds existed to revoke the MOU. The Department asserts neither of these defenses. Instead, the Department contends that it was entitled to avoid arbitration because its defense to the grievance relied on rights derived from a state statute. Only the courts, the Department argues, have the power to interpret and apply such statutes.

We have found no California case that directly addresses this contention. In support of its position, the Department relies almost exclusively on an explication of the separation of powers doctrine in *McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467 [20 Cal.Rptr.3d 428, 99 P.3d 1015]: " 'The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by [the California] Constitution.' [Citation.] . . . 'The judicial power is conferred upon the courts by the Constitution and, in the absence of a constitutional provision, cannot be exercised by any other body.' [Citation.] [¶] . . . 'Ultimately, the interpretation of a statute is an exercise of the judicial power the Constitution assigns to the courts.' [Citation.]" (*Id.* at p. 472.)

The separation of powers doctrine has no bearing on the Department's claim. The purpose of the doctrine is to define the core powers of the three branches of government and prevent unwarranted infringement by one upon another's core powers. (See *Marine Forests Society v. California Coastal Com.* (2005) 36 Cal.4th 1, 24–25 [30 Cal.Rptr.3d 30, 113 P.3d 1062]; *In re Rosenkrantz* (2002) 29 Cal.4th 616, 662 [128 Cal.Rptr.2d 104, 59 P.3d 174] [" 'The separation of powers doctrine limits the authority of one of the three branches of government to arrogate to itself the core functions of another branch' "].) We recognize that the phrase " 'the interpretation of a statute is an exercise of the judicial power the Constitution assigns to the courts' " might appear superficially to support the Department's position. The phrase must be understood, however, in the larger context of the doctrine of separation of powers. Read in that context, it means only that legislative and executive officers may be restricted from exercising the judicial power of

issue in the arbitration will be whether the state was permitted to refuse to bargain with representatives of the rank and file while a representative of the supervisors was in the room. The Union's claim that observers must be permitted is not based on any legal right of the supervisors to observe but on the asserted right of the rank and file to invite observers into the room, after giving advance notice, presumably pursuant to the ground rules. This is an arbitrable grievance under the MOU that does not require the arbitrator to make any ruling with respect to the employment rights of the supervisors.

statutory interpretation. Arbitrators are not agents of either the executive or legislative branch; they act only upon the agreement of the parties. The separation of powers doctrine was not intended to reach arbitrators' handling of state statutes and does not prohibit them from interpreting those statutes in reaching their decisions. The Department cites no case even suggesting the contrary.

While no California case has expressly ruled on the exclusive right of judges to consider otherwise arbitrable cases raising issues of statutory interpretation, the Department's position runs counter to the assumptions that underlie many California decisions, which anticipate that arbitrators will engage in statutory interpretation. In *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066 [90 Cal.Rptr.2d 334, 988 P.2d 67], for example, the Supreme Court considered whether a party .could be required to arbitrate a cause of action asserted under the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.). In the course of the decision, the court noted that the United States Supreme Court "has repeatedly made clear that arbitration may resolve statutory claims as well as those purely contractual if the parties so intend, and that in doing so, the parties do not forego substantive rights, but merely agree to resolve them in a different forum." (*Broughton v. Cigna Healthplans*, at p. 1075.) The court concluded that "statutory damages claims are fully arbitrable." (*Id.* at p. 1084.) Subsequently, in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669], the court defined the minimum procedural requirements that would permit arbitration of certain statutory claims. (See *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1076 [130 Cal.Rptr.2d 892, 63 P.3d 979].) These cases appear to assume, if not expressly hold, that arbitrators are permitted to interpret statutes, since it is inevitable that an arbitrator asked to resolve a statutory claim will be required to engage in interpretation of the statute. The Union cites us to a multitude of other state and federal cases in which arbitrators would be required to engage in statutory interpretation, including cases involving statutes of limitation (e.g., *Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co.* (1992) 6 Cal.App.4th 1266, 1276 [8 Cal.Rptr.2d 587]), procedural rules governing class actions (e.g., *Garcia v. DIRECTV, Inc.* (2004) 115 Cal.App.4th 297, 299–300 [9 Cal.Rptr.3d 190]), and other statutes (e.g., *Orpustan v. State Farm Mut. Auto. Ins. Co.* (1972) 7 Cal.3d 988, 991–992 [103 Cal.Rptr. 919, 500 P.2d 1119] [Insurance Code provision]). There are others that could have been cited. (E.g., *County of Solano v. Lionsgate Corp.* (2005) 126 Cal.App.4th 741, 747–748 [24 Cal.Rptr.3d 362] [approving arbitration of claim under state False Claims Act]; *Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 690–692 [99 Cal.Rptr.2d 809] [approving arbitration of claim under state unfair competition law]; *Service Employees Internat. Union v. City of Los*

*Angeles* (1996) 42 Cal.App.4th 1546, 1553–1554 [50 Cal.Rptr.2d 216] [requiring arbitration of application of city administrative code provision].)

█ Further, the Department's contention appears to be inconsistent with the Supreme Court's still-evolving jurisprudence regarding substantive appellate review of arbitration awards. The court comprehensively reconsidered such review in *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899], concluding that "with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (*Id.* at p. 11.) However, the court left open the possibility that an arbitrator's award could be reviewed "when according finality to the arbitrator's decision would be incompatible with the protection of a statutory right." (*Id.* at p. 33.) This provision for appellate review of possible statutory violations appears to constitute an implicit recognition that, as an initial matter, arbitrators are empowered to consider statutory defenses and therefore to interpret statutes. In the subsequent case *Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269 [52 Cal.Rptr.2d 115, 914 P.2d 193], the school district claimed that the collective bargaining agreement, as interpreted by the arbitrator, was inconsistent with provisions of the Education Code and that the code superseded the provisions of the collective bargaining agreement—an argument similar in nature to the defense asserted by the Department here. (*Id.* at p. 273.) Despite the school district's purportedly conclusive statutory defense, the Supreme Court did not suggest that such a case should never have reached the arbitrator. Rather, it ruled that the Education Code provisions represented an " 'explicit legislative expression of public policy,' " permitting *review* of the arbitrator's award to ensure that it did not contravene this public policy. (*Id.* at p. 277.) Court of Appeal decisions have also considered arguments that an arbitrator's decision created a violation of statutory rights without suggesting that the arbitrators should or could have been precluded from reaching those statutory issues. (E.g., *Jones v. Humanscale Corp.* (2005) 130 Cal.App.4th 401, 410 [29 Cal.Rptr.3d 881]; *Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 444–445 [123 Cal.Rptr.2d 122].)

While the Department's contention appears to be new to California courts, it is not new to the federal judiciary. In *Carey v. General Electric Company* (2d Cir. 1963) 315 F.2d 499, the defendant opposed a petition to compel arbitration on the ground that the disputed clause of the parties' collective bargaining agreement was unlawful. The defendant claimed that if the arbitrator accepted the plaintiff's interpretation of the agreement and ordered compliance, the resulting order would compel the defendant to commit an unfair labor practice under National Labor Relations Board (NLRB) regulations. The trial court accepted the defendant's argument, declared the disputed provision of the collective bargaining agreement illegal, and denied the petition to compel. (*Id.* at p. 511.) The court of appeals reversed the denial

of arbitration, with reasoning applicable to the present dispute: "We hold that the withdrawal of this grievance from arbitration was premature, and that it . . . must be submitted to arbitration. As we understand the grievance, . . . . [it] raises a question of contract interpretation meet for decision by the arbitrator. . . . [Arbitration] will provide a ready means of healing the disruptive relationship between union and management; not only will it resolve questions going to the merits of the collective bargaining agreement, but as we have already said, it may have the 'therapeutic values' of which the Supreme Court spoke in *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 568 [4 L.Ed.2d 1403, 80 S.Ct. 1343] (1960). Even if we were to assume the NLRB's position [in construing its regulations] to be as clear as [the trial judge] thought, conflict with its policies is here wholly conjectural. It is by no means certain that the union's grievance will be found warranted. Further, if the arbitrator does uphold the union's construction of the seniority provision in question, he might himself decline to fashion an award based upon it for fear that he would encourage a practice banned by the labor act. We cannot construct a framework of legal principles governing arbitration on the theory that the arbitrator is ignorant or oblivious of the pronouncements of the Board and the courts. . . . [¶] Only if none of these approaches is adopted by the arbitrator would it become necessary to determine whether a court should enforce an award that clearly compels an unfair labor practice. To do so now would be to 'raise an unfair labor practice question prematurely and gratuitously.' [Citation.]" (*Carey v. General Electric Company*, at p. 512.) Several other federal decisions have rejected claims by parties to an agreement to arbitrate that they should be allowed to bypass arbitration because the claims made by the petitioner are inconsistent with statutory law or public policy. (See, e.g., *Larry's United Super, Inc. v. Werries* (8th Cir. 2001) 253 F.3d 1083, 1085–1086; *National R.R. Passenger Corp. v. Consolidated Rail* (D.C. Cir. 1990) 282 U.S. App.D.C. 132 [892 F.2d 1066, 1067–1069]; *Life of America Ins. Co. v. Aetna Life Ins. Co.* (5th Cir. 1984) 744 F.2d 409, 411, 412.)

In light of the above, we find no merit in the Department's contention that it is entitled to skip arbitration because the claim asserted by the Union calls for statutory interpretation. First, there is simply no authority to support the Department's position that courts alone can interpret statutes, to the exclusion of arbitrators. It is certainly true that courts will, in some instances, be the *final* interpreters of statutory law as a result of their appellate authority, but nothing in the statutes or the case law suggests that arbitrators cannot also interpret statutes. On the contrary, the body of case law governing arbitration has recognized repeatedly that arbitrators may be presented with issues of statutory interpretation and are entitled to resolve those issues—at least in the first instance.

Second, the presence of a potentially dispositive statutory issue is not recognized as a defense to arbitration under Code of Civil Procedure section

1281.2. As discussed at length above, when parties to a dispute have agreed to arbitrate the dispute, section 1281.2 requires arbitration unless the agreement is revocable or arbitration has been waived. Further, there is a strong public policy favoring arbitration. (*Valsan Partners Limited Partnership v. Calcor Space Facility, Inc., supra,* 25 Cal.App.4th at p. 816.) There is no statutory exception for arbitrations presenting issues of statutory construction.

Fundamentally, the Department is attempting to leverage its contention that Government Code section 3529 supersedes the substantive terms of the MOU into an argument that section 3529 supersedes the obligation to arbitrate entirely. Even assuming the Department is correct that section 3529 supersedes any inconsistent provisions of the MOU, section 3529 in no way prevents the presentation of this argument to an arbitrator. Reduced to its essence, the Department's claim is that it should be permitted to avoid arbitration because the Union's position is barred by section 3529—in other words, that the Union's claim, as a matter of law, has no merit. As discussed above, Code of Civil Procedure section 1281.2 expressly *forbids* courts from denying arbitration on the ground that the petitioner's claim is meritless.

Because we find this dispute to be appropriate for arbitration, we express no opinion on the merits of the Department's underlying argument that Government Code section 3529, subdivision (c) prohibits supervisors from observing the meet-and-confer sessions of the rank and file and supersedes any inconsistent provisions in the MOU.

### III. DISPOSITION

The order of the trial court is reversed. The matter is remanded for entry of an order granting the Union's petition and compelling arbitration of the Union's grievances under the MOU.

Marchiano, P. J., and Stein, J., concurred.

A petition for a rehearing was denied September 13, 2006, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied November 29, 2006, S147033.