187 Cal.App.4th 81 (2010)
CALIFORNIA TEACHERS ASSOCIATION et al., Plaintiffs and Appellants,
v.
GOVERNING BOARD OF THE SALINAS CITY ELEMENTARY SCHOOL DISTRICT et al., Defendants and Respondents.
No. H033788.
Court of Appeals of California, Sixth District.
July 14, 2010.
*84 Tuttle & McCloskey, Kay M. Tuttle and Ernest Hastings Turtle III for Plaintiffs and Appellants.
Breon & Shaeffer, George W. Shaeffer, Jr., and Keith V. Breon for Defendants and Respondents.

OPINION
MIHARA, J.
Plaintiffs California Teachers Association (CTA) and the Salinas Elementary Teachers Council (SETC) (collectively, the unions) brought an action against defendants Governing Board of the Salinas City Elementary School District and the Salinas City Elementary School District (collectively, the District). The action alleged that the District's interpretation of the parties' collective bargaining agreement created teacher pay disparities in violation of Education Code section 45028,[1] and that contract language freezing advancement for some but not all teachers for the 2005-2006 school year created additional salary uniformity violations. The District demurred on the ground the court lacked jurisdiction because the unions had not adequately pleaded exhaustion of the administrative remedy specified in the collective bargaining agreement. The trial court sustained the demurrer without leave to amend and dismissed the action.
On appeal, the unions claim the sustaining of the demurrer was error.[2] They contend that (1) "case law is clear that even though a salary schedule is negotiated and is a part of the collective bargaining agreement . . ., the Superior Court still has . . . jurisdiction to determine whether the salary schedule or the implementation violated . . . section 45028"; and (2) they "had no adequate or available administrative remedy to exhaust." We conclude the demurrer was properly sustained, and we affirm the judgment.

I. Background
As this case comes to us after the sustaining of a demurrer, we accept as true all properly pleaded material allegations in the unions' verified petition *85 for writ of mandate and complaint for declaratory relief (the complaint). (Mirkin v. Wasserman (1993) 5 Cal.4th 1082, 1087 [23 Cal.Rptr.2d 101, 858 P.2d 568].)
CTA is an employee organization that represents its members "in all matters relating to their employment." SETC is a local chapter of CTA. SETC is "the exclusive representative employee organization for the credentialed employees of [the] District." The District has "jurisdiction and control over the employment, status, classification and salary of [the unions'] members who are certificated employees of the District."
SETC and the District are parties to a collective bargaining agreement that was in effect at all times relevant to their dispute. A negotiated salary schedule is a part of that agreement.[3] The schedule is in the form of a grid, with 22 horizontal rows or "step[s]" representing years of teaching experience and six vertical columns representing hours of training beyond a bachelor's degree. "Teachers are placed and paid on the salary schedule according to their years of teaching experience (service) and education (training)." As teachers gain years of service, they progress vertically on the schedule, earning salary increases called "step" increases. As they acquire training credits, they progress horizontally on the schedule, earning salary increases called "`class'" or "`column'" increases.
"Salary placement on [the schedule] was based solely on years of training and years of experience." As respects advancements, however, "[t]he District.. . interpreted th[e] agreement for many years to limit . . . advancements.. . to one step and one column per year." Additionally, "in the 2005-06 school year the District [negotiated contract language that] froze the advancement . . . for teachers on steps 1 through 11 but permitted teachers on steps 12, 14 and 18 to advance . . . . This action had the effect of creating additional salary uniformity violations." The District's "failure to classify teachers on a uniform basis has caused . . . a disparity in . . . salaries, in that numerous teachers with the same experience and training are being paid at different rates in violation of their rights under the Education Code."
The collective bargaining agreement includes a five-step grievance resolution process that culminates in binding arbitration if the grievance is not *86 resolved at an earlier step. A "grievance" is "a written claim by a grievant that a controversy, dispute or disagreement of any kind exists arising out of or in some way involving an alleged misinterpretation, misapplication, or violation of this [collective bargaining] agreement." A "grievant" is "[a]n employee or group of employees or SETC, provided an employee(s) has been adversely affected."
In April 2008, SETC met with District officials. In a letter sent the day after that meeting, SETC told the District, "As stated in our . . . meeting, it has come to [our] attention that the method agreed to by the District and SETC to advance our bargaining unit members on the salary schedule is in effect, illegal" because "[o]ur members are not advancing on the salary schedule as stipulated in . . . Education Code Section 45028." The letter demanded that the District "take immediate action to determine which bargaining unit members are in need of a salary correction and take the appropriate actions to compensate these bargaining unit members." It concluded, "We look forward to receiving your response at our next scheduled meeting . . . ."
After the District "wrongfully failed and refused . . . to reclassify [SETC's] members according to Education Code § 45028," the unions filed suit. Their complaint prayed for an order compelling the District (1) to "reclassify each teacher on the salary schedule on the basis of [a] uniform allowance for . . . years of experience and training," (2) to pay "back pay with prejudgment interest," and (3) to "calculate and pay the proper retirement contributions.. . ." The complaint also sought a declaration that the District "violated Education Code section 45028 and the teachers' rights thereunder" by failing to classify teachers uniformly according to years of experience and training, and that it was required to pay teachers backpay with interest and make proper retirement contributions.
The District demurred to the complaint on two grounds: (1) lack of subject matter jurisdiction "because [the unions] failed to adequately plead they exhausted the [grievance/arbitration procedures][[4]] in the . . . collective bargaining agreement," and (2) failure to state a cause of action. The trial court sustained the demurrer on the first ground. "I agree with that position. I *87 agree that the grievance procedure must be exhausted before seeking judicial review. So I'll sustain the demurrer without leave to amend." The case was dismissed, and the unions filed a timely notice of appeal.

II. Discussion

A. Standard of Review
"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. `We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.]'" (Blank v. Kirwan (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58] (Blank).) "This consideration of facts includes those evidentiary facts found in recitals of exhibits attached to a complaint. [Citation.]" (Satten v. Webb (2002) 99 Cal.App.4th 365, 375 [121 Cal.Rptr.2d 234] (Satten).) "`We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]" (Blank, at p. 318.) We "review the complaint de novo to determine . . . whether or not the trial court erroneously sustained the demurrer as a matter of law. [Citation.]" (Cantu v. Resolution Trust Corp. (1992) 4 Cal.App.4th 857, 879 [6 Cal.Rptr.2d 151], fn. omitted.)
"[A] jurisdictional defense appearing on the face of the complaint, or based upon judicially noticeable facts, is appropriately addressed on demurrer. [Citation.]" (Satten, supra, 99 Cal.App.4th at p. 374.) On appeal, "`the plaintiff bears the burden of demonstrating that the trial court erred.' [Citation.]" (Zipperer v. County of Santa Clara (2005) 133 Cal.App.4th 1013, 1020 [35 Cal.Rptr.3d 487].)

B. Exhaustion of Grievance/Arbitration Procedures
The unions insist they were not required to exhaust the grievance/arbitration procedures because their action sought to enforce a statute rather than "to enforce compliance with the collective bargaining agreement." The District disagrees, arguing that because the action "clearly involves a dispute or disagreement `of any kind'" that arises out of or in some way involves "`an alleged misinterpretation' or `misapplication'" of the agreement, it falls within the definition of "grievance" and is therefore subject to the grievance/ arbitration procedures. The District contends the unions cannot circumvent the arbitration requirement in the grievance procedures by alleging a statutory violation. "[T]here certainly cannot be a law somewhere that says just *88 because somebody alleges you violated the Education Code, you can ignore a . . . failure to exhaust" internal grievance/arbitration procedures. We agree with the District's position.
(1) "`It is the general rule that a party to a collective bargaining contract which provides grievance and arbitration machinery for the settlement of disputes within the scope of such contract must exhaust these internal remedies before resorting to the courts in the absence of facts which would excuse him from pursuing such remedies. [Citations.] This rule, which is analogous to the rule requiring the exhaustion of administrative remedies as a condition precedent to resorting to the courts . . ., is based on a practical approach to the myriad problems, complaints and grievances that arise under a collective bargaining agreement. It makes possible the settlement of such matters by a simple, expeditious and inexpensive procedure, and by persons who, generally, are intimately familiar therewith. . . .'" (Charles J. Rounds Co. v. Joint Council of Teamsters No. 42 (1971) 4 Cal.3d 888, 894 [95 Cal.Rptr. 53, 484 P.2d 1397], citation omitted (Rounds), quoting Cone v. Union Oil Co. (1954) 129 Cal.App.2d 558, 563-564 [277 P.2d 464] (Cone).) "Such procedures, which have been worked out and adopted by the parties themselves, must be pursued to their conclusion before judicial action may be instituted unless circumstances exist which would excuse the failure to follow through with the contract remedies. [Citations.]" (Cone, at p. 564, italics added.)
(2) "As a matter of public policy, contractual arbitration remains a highly favored means of dispute resolution even for public sector collective bargaining units." (Service Employees Internat. Union, Local 1000 v. Department of Personnel Admin. (2006) 142 Cal.App.4th 866, 870 [48 Cal.Rptr.3d 457] (Service Employees), citing Posner v. Grunwald-Marx, Inc. (1961) 56 Cal.2d 169, 180 [14 Cal.Rptr. 297, 363 P.2d 313] (Grunwald-Marx).) "A party to a collective bargaining agreement containing an express grievance and arbitration mechanism can bypass arbitration only if it can be said `"`with positive assurance'"' [that] the clause is not susceptible to an interpretation that covers the asserted dispute." (Service Employees, at p. 870, quoting Rounds, supra, 4 Cal.3d at p. 892.) "Doubts as to whether the arbitration clause applies are to be resolved in favor of coverage." (Grunwald-Marx, at p. 175.)
Here, it cannot be said that the grievance/arbitration procedures in the collective bargaining agreement are not susceptible to an interpretation that covers the parties' dispute. The agreement defines "grievance" very broadly as "a written claim by a grievant that a controversy, dispute or disagreement of any kind exists arising out of or in some way involving an alleged misinterpretation, misapplication, or violation of this agreement." (Italics added.) The unions allege facts that place their dispute squarely within this *89 definition. Paragraph 13 of the unions' complaint alleges that "[a]t all times herein, a Collective Bargaining Agreement was in effect between the District and [the unions]. The District has interpreted this agreement for many years to limit . . . advancements on the salary schedule to one step and one column per year. The District's interpretation and/or restriction are contrary to Education Code § 45028." (Italics added.) Paragraph 14 alleges that the salary freeze imposed for the 2005-2006 school year, pursuant to contract provisions attached as exhibits to the complaint, "had the effect of creating additional salary uniformity violations." Paragraph 17 alleges that SETC called the alleged misinterpretation of the agreement to the District's attention in a letter. A copy of that letter was made an exhibit to the union's complaint. The letter is signed by SETC's president and by the chairperson of its negotiating team. The definition of "grievant" expressly includes SETC. The complaint thus alleges "a written claim" by "a grievant" involving "a controversy, dispute or disagreement of any kind . . . in some way involving an alleged misinterpretation, misapplication, or violation of" the collective bargaining agreement. (Italics added.) In short, it alleges a "grievance."
The unions nonetheless insist "it is clear . . . that a `grievance' is limited to contract violations and that claims to enforce the Education Code and specifically section 45028 do not fit within the definition of a `grievance.'" We disagree. The definition of "grievance" is not limited to violations of the agreement. It also includes misinterpretations and misapplications of that agreement. The definition is more than broad enough to include the unions' claims. We reject the unions' contention that "grievances" are limited to contract violations.

1. Arbitrators May Interpret and Apply Statutes
(3) The unions assert that "[m]any districts have raised the issue of failure to exhaust administrative remedies involving statutory rights under the Education Code." "The courts have consistently held," they contend, "that the superior court retains jurisdiction to determine if there has been a violation of the Education Code . . . ." A long string cite follows. The cited cases do not hold or even suggest the unions can circumvent the grievance/arbitration procedures in their collective bargaining agreement. Three of those cases do not even mention exhaustion of administrative remedies. (Adair v. Stockton Unified School Dist. (2008) 162 Cal.App.4th 1436 [77 Cal.Rptr.3d 62]; California Teachers' Assn. v. Parlier Unified School Dist. (1984) 157 Cal.App.3d 174 [204 Cal.Rptr. 20] (Parlier); Campbell v. Graham-Armstrong (1973) 9 Cal.3d 482 [107 Cal.Rptr. 777, 509 P.2d 689].) "Obviously, cases are not authority for propositions not considered therein." (Roberts v. City of Palmdale (1993) 5 Cal.4th 363, 372 [20 Cal.Rptr.2d 330, 853 P.2d 496].)
*90 The remaining cases are readily distinguishable. In California Teachers' Assn. v. Livingston Union School Dist. (1990) 219 Cal.App.3d 1503 [269 Cal.Rptr. 160] (Livingston), a school district contended the petitioners had to pursue their claims in the first instance before the Public Employment Relations Board (PERB). The trial court agreed, but the Court of Appeal reversed. PERB has exclusive initial jurisdiction over claims alleging "`unfair practice'" or violations of the Education Employment Relations Act (EERA). The petitioners had alleged neither. Their claims were therefore outside the limited scope of the administrative remedy, and they were not required to exhaust it. (Livingston, at pp. 1525-1526.) Here, there is no contention that the unions must pursue their claims before PERB. More importantly, their claims are plainly within the broad scope of the grievance/arbitration procedures. Livingston is inapposite.[5]
In Tracy Educators Assn. v. Superior Court (2002) 96 Cal.App.4th 530 [116 Cal.Rptr.2d 916 (Tracy), the collective bargaining agreement defined "grievance" narrowly as "`an allegation that the District has violated this Agreement.'" (Tracy, at p. 538.) Where it was clear the teacher's claim for a leave of absence did not allege a violation of the agreement, the court held that "[t]he arbitration provision . . . does not cover this dispute." (Tracy, at p. 538.) Here, unlike in Tracy, the definition of "grievance" covers the unions' claims. Tracy is inapposite.
In United TeachersL.A. v. Los Angeles Unified School Dist. (1994) 24 Cal.App.4th 1510 [29 Cal.Rptr.2d 897] (United Teachers), the court stated in a footnote that "[t]he petition in this case was not an attempt to enforce compliance with the collective bargaining agreement but with the controlling statutes. Consequently petitioner was not required to exhaust administrative remedies before seeking equitable relief in the trial court." (United Teachers, at p. 1519, fn. 4.) The only logical inference from these two meager sentences, in our view, is that in United Teachers, as in Tracy, the collective bargaining agreement defined "grievance" narrowly, and that narrow definition put the dispute outside the scope of the grievance procedures. (See Tracy, supra, 96 Cal.App.4th at p. 538.) We do not believe these two footnoted *91 sentences can be read to support the expansive proposition the unions urge. United Teachers does not advance their position.
Jefferson Classroom Teachers Assn. v. Jefferson Elementary School Dist. (1982) 137 Cal.App.3d 993 [187 Cal.Rptr. 542] (Jefferson) and Dixon v. Board of Trustees (1989) 216 Cal.App.3d 1269 [265 Cal.Rptr. 511] (Dixon) are distinguishable because in both cases, the plaintiffs exhausted their administrative remedies. (Jefferson, at p. 995; Dixon, at pp. 1274-1275.) Instead of supporting the unions' position, Dixon lends implicit support to the District's position that a dispute otherwise subject to grievance/arbitration procedures is not exempted from those procedures simply because the parties' dispute involves claimed statutory violations, including a claimed violation of section 45028. (Dixon, at pp. 1274-1275 [trial court "denied Dixon's [first mandate] petition without prejudice [for] fail[ure] to exhaust her administrative remedies" and, after she engaged in nonbinding arbitration, abated proceedings on her second petition "so that petitioners could exhaust their administrative remedies before PERB"].)
(4) Board of Education v. Round Valley Teachers Assn. (1996) 13 Cal.4th 269 [52 Cal.Rptr.2d 115, 914 P.2d 193] (Round Valley), is likewise distinguishable because there too, the plaintiffs exhausted internal grievance/ arbitration procedures before resorting to the courts. (Round Valley, at p. 273.) After the dispute was arbitrated pursuant to those procedures, the school district filed a petition to vacate the award, which the trial court granted. (Round Valley, at pp. 273, 274.) The California Supreme Court agreed that the arbitrator exceeded his authority by purporting to enforce a provision in the collective bargaining agreement that was in conflict with, and therefore preempted by, the Education Code. (Round Valley, at p. 288.) Round Valley does not stand for the proposition that statutory claims are exempt from collective bargaining agreement grievance procedures. Nowhere in Round Valley did the high court suggest the case should not have been arbitrated. Its holding was narrower: "The statutory scheme governing the proper subjects for collective bargaining . . . and the reelection of probationary teachers . . . makes it clear that a school district's decision not to reelect a probationary teacher . . . is vested exclusively in the district and may not be the subject of collective bargaining." (Round Valley, at p. 287, italics added, citations omitted.) Therefore, the school district's decision could not be challenged as a breach of the collective bargaining agreement. Here, unlike in Round Valley, the statutory scheme makes it clear that "matters relating to wages . . . and other terms and conditions of employment" (which include "procedures for processing grievances") can be the subject of collective bargaining. (Gov. Code, § 3543.2, subd. (a).) Round Valley does not permit the unions to bypass the grievance/arbitration procedures, because their allegation that the District's misinterpretation of the collective bargaining *92 agreement violates the Education Code puts their dispute squarely within the agreement's definition of "grievance."
(5) The District relies on California Correctional Peace Officers Assn. v. State of California (2006) 142 Cal.App.4th 198 [47 Cal.Rptr.3d 717] (Peace Officers) to support its contention that since arbitrators may interpret and apply statutes, the unions must exhaust the grievance/arbitration procedures in the collective bargaining agreement before resorting to the courts. We agree with the District's position.
In Peace Officers, the parties disputed whether supervisory employees could observe negotiations with rank-and-file employees and vice versa. The union argued that they could, and had in fact been doing so for several years pursuant to negotiated "ground rules." (Peace Officers, supra, 142 Cal.App.4th at pp. 201, 202.) The state countered that Government Code section 3529, providing that supervisory employees "`shall not participate in meet and confer sessions on behalf of'" rank-and-file employees and vice versa, as a matter of law superseded anything to the contrary in the ground rules. (Peace Officers, at p. 201.) The union petitioned to compel arbitration of the dispute pursuant to a grievance resolution procedure that called for binding arbitration of "`grievances which involve the interpretation, application or enforcement of the provisions of this [memorandum of understanding].'" (Peace Officers, at p. 203.) The state opposed the petition, arguing that it was not required to arbitrate the dispute because only courts, not arbitrators, can interpret statutes. (Peace Officers, at p. 202.) The trial court denied the petition. (Ibid.)
The Court of Appeal reversed, holding that "[t]here is no statutory exception for arbitrations presenting issues of statutory construction." (Peace Officers, supra, 142 Cal.App.4th at p. 211.) Six reasons supported the court's rejection of the state's argument that arbitrators cannot interpret statutes.
First, the state's position ran counter to the assumptions underlying a long list of California decisions "anticipat[ing] that arbitrators will engage in statutory interpretation." (Peace Officers, supra, 142 Cal.App.4th at p. 208.) The court explained: "In Broughton v. Cigna Healthplans (1999) 21 Cal.4th 1066 [90 Cal.Rptr.2d 334, 988 P.2d 67], for example, the Supreme Court considered whether a party could be required to arbitrate a cause of action asserted under the Consumer Legal Remedies Act [citation]. . . . [T]he court noted that the United States Supreme Court `has repeatedly made clear that arbitration may resolve statutory claims as well as those purely contractual if the parties so intend, and that in doing so, the parties do not forego substantive rights, but merely agree to resolve them in a different forum.' [Citation.] The court concluded that `statutory damages claims are fully *93 arbitrable.' [Citation.] Subsequently, in Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669], the court defined the minimum procedural requirements that would permit arbitration of certain statutory claims. [Citation.] These cases appear to assume, if not expressly hold, that arbitrators are permitted to interpret statutes, since it is inevitable that an arbitrator asked to resolve a statutory claim will be required to engage in interpretation of the statute." (Ibid.)
Second, the court found the state's contentions "inconsistent with the [California] Supreme Court's still-evolving jurisprudence regarding substantive appellate review of arbitration awards." (Peace Officers, supra, 142 Cal.App.4th at p. 209, citing Moncharsh v. Heily & Blase (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899], which "left open the possibility that an arbitrator's award could be reviewed `when according finality to the arbitrator's decision would be incompatible with the protection of a statutory right'"].) "This provision for appellate review of possible statutory violations appears to constitute an implicit recognition that, as an initial matter, arbitrators are empowered to consider statutory defenses and therefore to interpret statutes." (Ibid.)
Third, "[w]hile the [state's] contention appears to be new to California courts, it is not new to the federal judiciary." (Peace Officers, supra, 142 Cal.App.4th at pp. 209-210 [citing federal decisions "reject[ing] claims by parties to an agreement to arbitrate that they should be allowed to bypass arbitration because the claims made by the petitioner are inconsistent with statutory law or public policy"].)
Fourth, "there is simply no authority to support the [state's] position that courts alone can interpret statutes, to the exclusion of arbitrators. It is certainly true that courts will, in some instances, be the final interpreters of statutory law as a result of their appellate authority, but nothing in the statutes or the case law suggests that arbitrators cannot also interpret statutes." (Peace Officers, supra, 142 Cal.App.4th at p. 210.)
Fifth, the existence of a potentially dispositive statutory issue does not preclude arbitration under Code of Civil Procedure section 1281.2. (Peace Officers, supra, 142 Cal.App.4th at pp. 210-211.) And finally, there is a strong public policy favoring arbitration. (Id. at p. 211.)
We find the court's analysis in Peace Officers persuasive. There, as here, the party attempting to avoid arbitration claimed that because a statute compelled the ultimate result it was seeking, the opposing party's position was wrong as a matter of law. But as the Peace Officers court explained, "Even assuming the [state] is correct . . ., [the statute] in no way prevents the *94 presentation of this argument to an arbitrator." (Peace Officers, supra, 142 Cal.App.4th at p. 211.) "[T]he presence of a potentially dispositive statutory issue is not recognized as a defense to arbitration under Code of Civil Procedure section 1281.2." (Peace Officers, at pp. 210-211, italics added.)
We see no reason to treat the presence of a potentially dispositive statutory issue as a defense to arbitration on a demurrer either. For all of the reasons articulated in Peace Officers, we agree that "[t]here is no statutory exception for arbitrations presenting issues of statutory construction." (Peace Officers, supra, 142 Cal.App.4th at p. 211.)
The unions do not challenge the Peace Officers court's reasoning. Instead, they attempt to distinguish the decision, asserting that "the cases cited by the District" "all had collective bargaining provisions with a grievance procedure that applied to the claim." We have already rejected the unions' contention that their dispute is not a "grievance." (See, ante, at pp. 88-89.)
(6) The unions' second basis for distinguishing Peace Officers is that "[n]one of the cases cited by the District involved mandatory statutory rights under the Education Code and therefore Section 44924 was also not an issue." Section 44924 provides that rights guaranteed by the Education Code cannot be waived by collective bargaining. As we understand the unions' argument, section 44924 "has been consistently used to render null and void any contractual provisions that conflict with any of the statutory benefits and rights set forth in the Education Code." Therefore, "[s]ince any contract provision is void which conflicts with teachers' rights under 45028, exhaustion of administrative remedies provided in the collective bargaining agreement is not required." We are not persuaded.[6]
None of the cases the unions cite supports their conclusion that section 44924 permits them to avoid exhausting the grievance/arbitration procedures.[7] (See, ante, at pp. 88-89 [distinguishing Livingston, Parlier, Tracy, Ukiah, United Teachers, and Wygant]; Veguez v. Governing Bd. of the Long Beach Unified School Dist. (2005) 127 Cal.App.4th 406, 416-417 [25 *95 Cal.Rptr.3d 526] [collective bargaining agreement required parties challenging its "`interpretation or application'" to follow internal grievance/ arbitration procedures, but where Veguez "challenge[d] neither," the dispute was not subject to those procedures, and she was not required to exhaust them].) We have found no authority supporting the unions' contention that they can avoid arbitration simply because their complaint alleges statutory violations. (Peace Officers, supra, 142 Cal.App.4th at p. 211.)

2. Unavailable and Inadequate Remedy
Citing exceptions to the exhaustion doctrine, the unions contend they can bypass arbitration because it is an "unavailable and inadequate remedy." We disagree.[8]
(7) "It is settled that the rule requiring exhaustion of administrative remedies does not apply where an administrative remedy is unavailable . . . or inadequate . . . ." (Tiernan v. Trustees of Cal. State University & Colleges (1982) 33 Cal.3d 211, 217 [188 Cal.Rptr. 115, 655 P.2d 317], citations omitted (Tiernan).) An administrative remedy is unavailable if the dispute is beyond the scope of the grievance procedure. (Id. at p. 218; Anton v. San Antonio Community Hospital (1977) 19 Cal.3d 802, 828-829 [140 Cal.Rptr. 442, 567 P.2d 1162].) It is inadequate "if it does not square with the requirements of due process" (Unnamed Physician v. Board of Trustees (2001) 93 Cal.App.4th 607, 620 [113 Cal.Rptr.2d 309]) or if the decision maker lacks the power to fashion an appropriate remedy[9] (Tiernan, at pp. 217-218).
The unions contend arbitration is an unavailable and inadequate remedy because "[t]he arbitrator's powers are . . . limited to the `application and interpretation of [the collective bargaining agreement's] provisions.'" "By [the agreement's] own terms," the unions claim, "the arbitrator has no authority to determine any other issues." "Therefore, the arbitrator has no power or authority to enforce or remedy violations of the Education Code. Nor does the Arbitrator have the authority to order a school district to comply with Education Code Section 45028." The unions' argument is simply a *96 variant of their earlier arguments that the dispute is not a "grievance" and that only judges can decide statutory issues. We have already rejected those arguments. (See, ante, at pp. 88-95.) We see nothing in the specific language the unions quote, or in the grievance/arbitration procedures generally, that would preclude an arbitrator from interpreting and applying Education Code provisions in the course of determining whether the District has misinterpreted the collective bargaining agreement. Nor do we see anything that would preclude an arbitrator from determining how that agreement must be interpreted to comply with the Education Code.
(8) "Arbitration is highly favored as a method for settling disputes. [Citation.] Courts should indulge every intendment to give effect to such proceedings [citation] and order arbitration unless it can be said with assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. [Citation.]" (Pacific Inv. Co. v. Townsend (1976) 58 Cal.App.3d 1, 9-10 [129 Cal.Rptr. 489] (Pacific Investment).) Here, the complaint seeks declaratory reliefa remedy well within the broad scope of the grievance/arbitration procedures. (See Pacific Investment, at p. 10 [arbitration clause broad enough to encompass declaratory relief on nature of partnership interest retained by removed general partner].) If the arbitrator determines that the District's interpretation of the collective bargaining agreement violates section 45028, while an alternate interpretation would not, and if the District then refuses to change its interpretation, the unions may seek a court order to enforce the arbitrator's decision. (Code Civ. Proc., § 1287.4; Gov. Code, § 3548.8; Kerr v. Nelson (1936) 7 Cal.2d 85, 88 [59 P.2d 821].) The mere possibility that they might need to do so in the future does not excuse their obligation to exhaust the grievance/arbitration procedures. Exhaustion is not excused merely "because the ultimate legal issues . . . are better suited for determination by the courts." (Department of Personnel Administration v. Superior Court (1992) 5 Cal.App.4th 155, 169 [6 Cal.Rptr.2d 714].) The "`policy considerations which support the imposition of a general exhaustion requirement remain compelling . . .'" and "[t]he logic holds even when no internal damage remedy is available, or a plaintiff seeks only money damages, so that resort to the courts is inevitable." (Campbell v. Regents of University of California (2005) 35 Cal.4th 311, 323 [25 Cal.Rptr.3d 320, 106 P.3d 976] (Campbell).) "[T]he `administrative proceeding will still promote judicial efficiency by unearthing the relevant evidence and by providing a record which the court may review.' [Citation.]" (Campbell, at p. 323, quoting Westlake Community Hosp. v. Superior Court (1976) 17 Cal.3d 465, 476 [131 Cal.Rptr. 90, 551 P.2d 410].)
(9) We conclude that the parties' collective bargaining agreement requires the unions to exhaust their internal grievance/arbitration procedures before resorting to the courts. The trial court did not err when it sustained the District's demurrer for failure to allege exhaustion of those procedures.

*97 III. Disposition
The judgment is affirmed.
Elia, Acting P. J., and McAdams, J., concurred.
NOTES
[1] Further statutory references are to the Education Code unless otherwise noted.
[2] The unions have never argued that amendment of the complaint would cure their failure to allege exhaustion.
[3] A copy of the salary schedule in effect for the 2001-2002 through 2005-2006 school years was attached as an exhibit to the complaint. A copy of the salary schedule in effect for the 2006-2007 school year was also attached.
[4] This court granted the District's unopposed request that we judicially notice a certified copy of the grievance/arbitration procedures. The District filed a similar request in the trial court. We assume that request was also unopposed, given that a month later, the unions attached a copy of "pertinent sections" of those procedures to their brief opposing the District's demurrer. Although the appellate record contains no express ruling on the District's request for judicial notice, the order sustaining the demurrer says the court "read and considered" it. Where, as here, the grievance/arbitration procedures were necessary for the court's decision, we assume the trial court granted the request. (Evid. Code, §§ 453, 456; Aaronoff v. Martinez-Senftner (2006) 136 Cal.App.4th 910, 918-919 [39 Cal.Rptr.3d 137].)
[5] Wygant v. Victor Valley Joint Union High School Dist. (1985) 168 Cal.App.3d 319 [214 Cal.Rptr. 205] (Wygant) and United Teachers of Ukiah v. Board of Education (1988) 201 Cal.App.3d 632 [251 Cal.Rptr. 499] (Ukiah), also cited by the unions, are inapposite for the same reason. (Wygant, at pp. 322-323 ["The problem with the school district's contention is that in this case neither unfair practices nor violation of Government Code sections 3540-3549.3 are alleged . . . ."]; Ukiah, at pp. 638-639 [noting that "PERB's jurisdiction does not extend to all disputes brought by an employee against a school district employer" and "find[ing] nothing in the case or statutory law which requires that claims which assert only violations of the Education Code be directed to the PERB simply because the defendant contends the EERA may be implicated in the resolution of the claim"].)
[6] The District does not dispute that rights guaranteed by the Education Code cannot be waived by collective bargaining. As the District's counsel noted at the hearing on the demurrer, "We're not arguing whether or not the . . . District could collectively bargain . . . to violate the Education Code. No. We know they cannot do that. And everybody else . . . knows that you cannot do that . . . [¶] . . . [¶] . . . [T]hat's not the issue before you. The issue before you is how do you adjudicate that? Who has the jurisdiction to determine whether or not the parties collectively bargained something in violation of the Education Code[?]"
[7] Jefferson, cited elsewhere by the unions, implicitly supports the opposite conclusion. (Jefferson, supra, 137 Cal.App.3d at pp. 995-998 [claimed violation of mandatory Ed. Code provision was arbitrated pursuant to grievance/arbitration procedures before the question was brought before the court].)
[8] In paragraph 23 of the complaint, the unions allege they "have no administrative remedies to exhaust, because [the District's] wrongful action is a violation of their statutory duty under the Education Code." This is a legal conclusion, which we need not credit on appeal from the sustaining of a demurrer. (Blank, supra, 39 Cal.3d at p. 318 ["`We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.'"]; Pan Pacific Properties, Inc. v. County of Santa Cruz (1978) 81 Cal.App.3d 244, 251 [146 Cal.Rptr. 428] ["It is settled . . . that . . . a demurrer . . . does not admit conclusions of fact or law . . . . Appellants' conclusionary statement that they exhausted their administrative remedies therefore cannot avail them." (citation omitted)].)
[9] There is no contention here the grievance procedures do not square with the requirements of due process.