Filed 10/29/25  Cal. Attorneys, Admin. Law Judges etc. v. Dept. of Human Resources CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CALIFORNIA ATTORNEYS, ADMINISTRATIVE LAW JUDGES, AND HEARING OFFICERS IN STATE EMPLOYMENT, | C102656 |
| Plaintiff and Appellant, | (Super. Ct. No. 24CV010637) |
| v. | |
| DEPARTMENT OF HUMAN RESOURCES, | |
| Defendant and Respondent. | |

Plaintiff California Attorneys, Administrative Law Judges, and Hearing Officers in State Employment (CASE) is a collective bargaining representative for legal professionals employed by the state.  In 2022, CASE and the State of California entered into a memorandum of understanding (MOU) covering State Bargaining Unit 2 attorneys and hearing officers (collectively, BU2).  In December 2023, CASE filed a grievance/complaint on behalf of BU2 members employed by the State Compensation Insurance Fund (State Fund) concerning annual performance awards.  In prior years,

1

State Fund issued performance awards in the same percentages for all rank-and-file employees. However, for 2023, employees in State Fund's Claims department would receive an additional 1 percent, not awarded to employees in the Corporate Legal Unit. CASE claimed this violated section 3.1.B. of the MOU, which provided, in relevant part, that the State had "the right to make reasonable rules and regulations pertaining to employees consistent with this [MOU] provided that any such rule shall be uniformly applied to all affected employees who are similarly situated."

State Fund denied the grievance/complaint. CASE then asked defendant Department of Human Resources (CalHR) to review the claim. CalHR also denied the grievance/complaint and rejected CASE's subsequent request for arbitration. CASE then filed a petition to compel arbitration in the trial court. The trial court denied the petition, concluding, in relevant part, that CASE failed to demonstrate that the issue raised concerning the performance awards was a matter covered by the MOU.

On appeal, CASE argues that the trial court erred in denying the petition to compel arbitration because the MOU requires arbitration of all disputes involving its express terms, and CASE's grievance alleged a violation of section 3.1.B. Agreeing with CASE, we will reverse.

BACKGROUND

*CASE's Grievance/Complaint*

The State of California entered into an MOU with CASE, effective July 1, 2022, through June 30, 2025. The MOU covered all BU2 attorneys throughout the state.

On December 27, 2023, CASE filed an Employee Contract Grievance/Complaint form. According to the grievance/complaint, approximately 10 years earlier, State Fund began issuing annual performance awards to employees in the form of a percentage of salary. It was determined that awards would be issued to all rank-and-file employees in the same percentage, regardless of job duties and regardless of individual performance (managers and supervisors received different percentage levels). BU2 employees were to

2

receive the same percentage award as all other rank-and-file employees from other bargaining units.

On December 1, 2023, the president of State Fund announced that the annual performance awards for 2023 would consist of 6 percent awards for rank-and-file employees. However, all employees in the Claims department would receive an additional 1 percent, raising their performance awards to 7 percent. Most BU2 employees at State Fund work in the Claims department. At the time, however, approximately 25 BU2 members worked in the Corporate Legal Unit and would not receive the additional 1 percent. The grievance/complaint alleged that these attorneys were suffering disparate treatment compared to all other BU2 employees at State Fund.

The grievance/complaint asserted that awarding an extra 1 percent to some but not all BU2 members would violate an "initial agreement" between State Fund and CASE that all rank-and-file employees would receive the same annual performance award percentage.

The grievance/complaint continued: "Moreover, Section 3.1.B of the . . . MOU provides that '[t]he State has the right to make reasonable rules and regulations pertaining to employees consistent with this MOU provided that any such rule **shall be uniformly applied to all affected employees who are similarly situated**.' (Emphasis added.) While this language predates the implementation of the performance awards, it provides additional support for the proposition that all BU2 attorneys at State Fund should be treated equally."

*State Fund Denial*

State Fund responded to CASE's grievance/complaint, stating that performance awards were administered under its direct authority, and were not subject to the terms of the MOU. It added, "[a]s State Fund's performance award is a program implemented and executed solely under the jurisdiction and authority of State Fund, the letter from CASE

is a complaint rather than a grievance.  Therefore, the applicability of Section 3.1 to the performance award program is an invalid nexus."

State Fund went on to address the merits and allegations of CASE's section 3.1 contentions, writing that the text of that section "applies only to rules and regulations that are consistent with the MOU, and State Fund's performance award program is not subject to the provisions of the MOU."

On the merits, State Fund found that, while the complaint alleged disparate and unfair treatment towards Corporate Legal Unit attorneys, the scope of the work performed by attorneys in Claims differed substantially.  According to State Fund, the extra 1 percent performance award "is purposefully designated for individuals who are directly involved in the day-to-day operations of claims management.  Though Corporate Legal and other State Fund departments provide support to our Claims department, they are not Claims employees who are involved in the direct handling of the claims themselves.  [¶]  Therefore, the decision to recognize those in Claims provides an additional recognition to those who have direct dealing, and influence on the fiscal expenditures of State Fund through the handling of the claims process."

State Fund concluded that CASE's complaint was neither arbitrable nor grievable, did not come under the provisions of the MOU, and was not under CalHR's jurisdiction.  Therefore, State Fund stated that its denial "serves as the final level of review in the complaint process."

*CASE's Appeal to CalHR*

CASE then asked CalHR to review State Fund's denial, stating that it "d[id] not agree with the department level decision on this grievance and disagrees with State Fund's determination that the matter at issue is a complaint." CASE reiterated that the performance award structure violated section 3.1.B. of the MOU.

CalHR denied CASE's request, finding that the grievance was procedurally deficient.  CalHR stated:  "As defined in section 7.2 of the . . . MOU, a grievance is a

4

dispute involving the interpretation, application, or enforcement of the express terms of the MOU. A complaint is defined as a dispute involving the application or interpretation of a written rule or policy not covered by the MOU. The materials presented in the grievance package dispute the application of the department's performance awards, which is not under the authority of the MOU. As such, this issue is considered a complaint. Complaints do not appeal to this level of review. Rather, for a complaint, [State Fund's] . . . response is the final level of review."

Notwithstanding its procedural denial, CalHR addressed the merits, noting that State Fund did not dispute that it awarded an extra 1 percent to Claims attorneys, "who have direct dealing and influence on the fiscal expenditures of [State Fund] through the handling of the claims process," as distinguished from Corporate Legal Unit attorneys. CalHR concluded: "CASE did not provide information that adequately disputes the department level response. Further, CASE did not demonstrate that [State Fund] attorneys in Claims and Corporate Legal are similarly situated. CASE did not demonstrate the application of performance awards are under the authority of the MOU or that [State Fund] violated the MOU in issuing an extra 1% performance award to the Claims department."

CASE requested arbitration. CalHR responded that "this dispute falls under the [MOU's] definition of a 'complaint' and thus is not subject to arbitration."

*Petition to Compel Arbitration*

After CalHR's denial, CASE petitioned to compel arbitration pursuant to Code of Civil Procedure section 1281.2. In the petition, CASE alleged it was the exclusive collective bargaining representative for approximately 5,000 legal professionals in BU2. Approximately 300 members were employed at State Fund. As in the grievance/complaint, CASE alleged in its petition that the change to the performance award scheme violated section 3.1.B. of the MOU.

5

*Tentative Ruling and Order Denying Petition to Compel Arbitration*

In its tentative ruling, the trial court denied CASE's petition to compel arbitration. The court concluded that, "even with the presumption of arbitrability, CASE fails to satisfy its burden to show that the parties agreed to arbitrate the issue of annual performance awards." According to the court, CASE failed to demonstrate that the performance awards were a " 'condition of employment covered by the MOU,' " and CASE had conceded that the MOU did not expressly address the performance awards.

The trial court was unpersuaded by CASE's "suggestion that its 'grievance' claimed a violation of Section 3.1.B. [of the MOU]. Indeed, its 'Statement of Grievance' alleged a violation of the 'initial agreement' . . . . [Citation.] With respect to Section 3.1.B., CASE simply cited to that section to provide 'additional support for the proposition that all BU2 attorneys at State Fund should be treated equally.' "

The trial court also said that CASE's representation that it filed its grievance because it involved the interpretation, application, or enforcement of section 3.1.B. of the MOU failed to take into account the entirety of that section. The court quoted another portion of that subsection providing that the "*State* has the right to make *reasonable rules and regulations* pertaining to employees *consistent with this MOU* provided that any such rule shall be uniformly applied to all affected employees who are similarly situated.*" The court concluded that it was State Fund, not the State, that made any relevant rule or regulation, and further concluded that CASE failed to demonstrate that State Fund's performance awards were a rule or regulation.

Finally, the trial court agreed "with CalHR that the phrase 'consistent with this MOU' means that the 'rules and regulations' exist outside the MOU, and when viewing this phrase in conjunction with the definition of 'complaint,' it shows that violations of Section 3.1.B are to be resolved through Section 7.2.B's complaint procedure. Section 7.2.B defines a 'complaint' as 'a dispute between the State and CASE. . . involving the application or interpretation of a *written rule or policy not covered by this MOU* and not

6

under the jurisdiction of the [State Personnel Board].' As noted above, CASE has not demonstrated that the performance awards are a 'condition of employment covered by the MOU, and CASE concedes that MOU does not expressly address performance awards.' "

Following oral argument, the trial court affirmed its tentative ruling, denying CASE's petition to compel arbitration.

DISCUSSION

I

*CASE's Contentions*

According to CASE, the MOU requires arbitration of all disputes involving the agreement's express terms. CASE emphasizes that its grievance on its face alleged a violation of section 3.1.B. of the MOU. It argues that the trial court erred in "at least three principal respects" when it denied the petition to compel arbitration. First, the trial court's framing of the issue—that CASE failed to show that the parties agreed to arbitrate " 'the issue of annual performance awards' "—"misconstrued the basis of the grievance and delved too far into the particulars of the underlying dispute." CASE emphasizes that its grievance alleged a violation of section 3.1.B. of the MOU, a general rule which required employers like State Fund to treat similarly situated employees the same.

Next, CASE argues that the trial court construed the term " 'the State' " in section 3.1.B. too narrowly in concluding the performance award structure was enacted by State Fund and not by " 'the State.' "

Lastly, CASE contends that the trial court erred by concluding that disputes concerning section 3.1.B. of the MOU were subject to the complaint process in section 7.2.B., rather than the grievance process of section 7.2.A. According to CASE, section 7.2.A. defines a grievance as a dispute over an express term of the MOU, and section 3.1.B. is an express term. CASE argues that whether the alleged violation of section 3.1.B. was a grievance or a complaint "was at least arguable," and therefore, the trial court was compelled to order arbitration.

7

## II

### *General Principles Concerning Arbitration*

" 'The right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract.' " (*Cione v. Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625, 634.)  "[T]he threshold questions presented by every motion or petition to compel arbitration are whether an agreement to arbitrate exists [citations] and, if so, whether the parties' dispute falls within the scope of that agreement."  (*Ahern v. Asset Management Consultants, Inc.* (2022) 74 Cal.App.5th 675, 687; see *Fleming v. Oliphant Financial, LLC* (2023) 88 Cal.App.5th 13, 19 ["In evaluating whether a disputed matter requires arbitration, the focus is preliminarily placed on any agreement by parties to do so.  ' "Under 'both federal and state law, the threshold question presented by a petition to compel arbitration is whether there is an agreement to arbitrate.' " ' "].)

In deciding whether a dispute concerns the interpretation of the MOU, we "are mindful that 'where the collective bargaining agreement provides for arbitration of all disputes pertaining to the meaning, interpretation and application of the collective bargaining agreement and its provisions, any dispute as to the meaning, interpretation and application of any specific matter covered by the collective bargaining agreement is a matter for arbitration.' [Citations.]  'The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator.  It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract.' [Citations.]  Moreover, in deciding whether there is a contractual duty to arbitrate a labor dispute, courts 'have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim.' " (*City of Los Angeles v. Superior Court* (2013) 56 Cal.4th 1086, 1098 (*City of Los Angeles*).)  "For disputes arising under collective bargaining

8

agreements, there is a 'presumption of arbitrability,' under which a court should order arbitration of a grievance ' "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." ' " (*Id*. at p. 1096.)

Where " ' "there is no '*factual* dispute as to the language of [the] agreement' [citation] or 'conflicting extrinsic evidence' regarding the terms of the contract [citation], our standard of review of a trial court order granting or denying a motion to compel arbitration under [Code of Civil Procedure] section 1281.2 is de novo." ' " (*Laymon v. J. Rockcliff, Inc.* (2017) 12 Cal.App.5th 812, 819.)

III

*Relevant Provisions of the MOU*

Section 3.1.B. provides, in part:  "The State has the right to make reasonable rules and regulations pertaining to employees consistent with this MOU provided that any such rule shall be uniformly applied to all affected employees who are similarly situated."

Article 7 addresses grievance and arbitration procedures.

Section 7.2.A. defines a "grievance" as "a dispute between the State and CASE, or between the State and one or more employees, involving the interpretation, application, or enforcement of the express terms of this MOU."

Section 7.2.B. defines a "complaint" as "a dispute between the State and CASE, or between the State and one or more employees, involving the application or interpretation of a written rule or policy not covered by this MOU and not under the jurisdiction of the [State Personnel Board].  Complaints shall only be processed as far as the department head or designee."

Sections 7.7 through 7.11 delineate the four steps in the formal grievance process. Section 7.11 provides that, if a grievance is not resolved in the prior three steps, which culminate in an appeal to CalHR, CASE has the right to submit the grievance to arbitration.

9

*Analysis*

As CASE conceded at the hearing, and has never disputed, State Fund's performance awards are not specifically addressed in the MOU.  Nevertheless, CASE contends the trial court misconstrued its position, as evidenced by the court's conclusion that CASE failed to prove "the parties agreed to arbitrate the issue of annual performance awards."  CASE's argument instead was, and is, that the MOU requires arbitration of all disputes regarding the express terms of the MOU, and State Fund's performance awards were issued in a disparate manner in violation of section 3.1.B. of the MOU.

According to CASE, to determine it was entitled to arbitration, we need only conclude that (1) CASE alleged a violation of the express terms of the MOU, specifically section 3.1.B., and (2) that violation is "subject to the arbitration provision of section 7.2.A."  This analytical framework is correct because, if CASE alleged a violation of the MOU's express terms, and if that alleged violation constitutes a grievance under section 7.2.A. because it involves "the interpretation, application, or enforcement of the express terms of this MOU," then because that grievance was not resolved in the three steps of the formal grievance process, under section 7.11, CASE would have the right to submit the grievance to arbitration.

We find that CASE did allege a violation of section 3.1.B. of the MOU on the face of its Employee Contract Grievance/Complaint.  We thus turn to whether the alleged violation of section 3.1.B.'s "uniform application" provision constitutes a "grievance" within the meaning of section 7.2.A., or a "complaint" within the meaning of section 7.2.B.

As stated, section 7.2.A. defines a "grievance" as "a dispute between the State and CASE, or between the State and one or more employees, *involving the interpretation, application, or enforcement of the express terms of this MOU*."  (Italics added.)  Section 7.2.B., on the other hand, defines a "complaint" as "a dispute between the State and

CASE, or between the State and one or more employees, *involving the application or interpretation of a written rule or policy not covered by this MOU* and not under the jurisdiction of the [State Personnel Board]." (Italics added.) Under section 7.2.B., "[c]omplaints shall only be processed as far as the department head or designee."

We agree with CASE that its grievance/complaint advances a grievance. Again, it alleges a violation of section 3.1.B. of the MOU on page two of the form under the heading "Statement of Grievance." CASE alleges that State Fund did not apply its rule concerning annual performance awards "uniformly . . . to all affected employees who are similarly situated" as required under section 3.1.B. This allegation implicates "the interpretation, application, or enforcement of" section 3.1.B.'s uniform application requirement, an "express term[] of th[e] [MOU]," thus, even if colorable arguments might exist on both sides of the uniform application question, we find it is a grievance within the meaning of section 7.2.A.

" 'In determining whether a matter is subject to arbitration, courts apply the presumption in favor of arbitration [citation]. . . . " 'Doubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration. The court should order them to arbitrate unless it is clear that the arbitration clause cannot be interpreted to cover the dispute.' " ' " (*California Correctional Peace Officers Assn. v. State of California* (2006) 142 Cal.App.4th 198, 205.) Because the grievance/complaint is better interpreted as alleging a violation of the express terms of the MOU, we conclude it is an arbitrable grievance.

The trial court agreed with CalHR that the language of section 3.1.B., providing that the State may "make reasonable rules and regulations pertaining to employees *consistent with this MOU*," establishes that State Fund's performance awards exist outside of the MOU, and thus are not covered grievances. (Italics added.) Particularly in light of the presumption in favor of arbitration (see *City of Los Angeles, supra,* 56 Cal.4th at p. 1096), we disagree that the phrase "consistent with this MOU" alone is enough to

11

establish that performance awards are not covered by the MOU.  More importantly, however, whether the performance awards are a rule or regulation "pertaining to employees consistent with this MOU," and, as such, are "outside the MOU," misses the point.

At issue in CASE's grievance is the express requirement under section 3.1.B. of the MOU that, if the State makes and applies a rule or regulation, here the performance awards, it must do so in a manner such that it is "uniformly applied to all affected employees who are similarly situated."  Whether it has failed to do so, therefore, is "a dispute between the State and CASE, or between the State and one or more employees, *involving the interpretation, application, or enforcement of the express terms of this MOU*," specifically section 3.1.B., and thus is a grievance under section 7.2.A.  (Italics added.)

To illustrate by way of example, the parties agree that the performance awards themselves are not expressly addressed in the MOU.  If CASE filed a grievance complaining that the performance awards, while uniformly applied to all similarly situated employees, were, for example, issued later than usual or in an incorrect amount, this would present a dispute "involving the application or interpretation of a written rule or policy not covered by this MOU" and would be a nonarbitrable complaint under section 7.2.B.  But because the dispute here turns on whether the performance award scheme was "uniformly applied to all affected [BU2] employees who are similarly situated" as required by section 3.1.B. of the MOU, the dispute involves the interpretation, application, or enforcement of the express terms of the MOU and thus raises a grievance under section 7.2.A.

That CASE in its grievance relied on the "initial agreement" between it and State Fund, and stated that the alleged violation of section 3.1.B. provided "additional support" for its grievance, led the trial court to state that it was "not persuaded by CASE's

suggestion that its 'grievance' claimed a violation of Section 3.1.B." We reach the opposite conclusion—the grievance on its face asserted a violation of section 3.1.B.

With regard to the trial court's conclusion that State Fund's actions did not constitute an act of " 'the State' " within the meaning of section 3.1.B., CASE notes that CalHR, in its briefing, did not defend the court's finding on this point. In fact, CalHR concedes that rules or regulations contemplated in section 3.1.B. include those adopted by State Fund. State Fund " 'is at once both an agency of the state and an insurance carrier.' " (*California Attorneys, Administrative Law Judges, and Hearing Officers in State Employment, et al. v. Brown* (2011) 195 Cal.App.4th 119, 124; see *De Campos v. State Compensation Ins. Fund* (1946) 75 Cal.App.2d 13, 14 [State Fund "is 'a political subdivision of the State of California' "], *De Campos*, at p. 17 [State Fund "constituted 'a governmental mandatory or agency to which the [L]egislature committed the administration of certain of the state's sovereign powers' "].) "The State" in section 3.1.B. includes State Fund.

Because we have concluded that CASE's claim alleging a violation of the express terms of section 3.1.B. of the MOU advanced a "grievance" within the meaning of section 7.2.A., and we resolve any doubts as to whether arbitration applies in favor of arbitration (*California Correctional Peace Officers Assn. v. State of California*, *supra,* 142 Cal.App.4th at p. 205), we conclude that under section 7.11 of the MOU, CASE had the right to submit the grievance over section 3.1.B. to arbitration.

DISPOSITION

The order denying CASE's petition to compel arbitration is reversed. The matter is remanded to the trial court with directions to grant the petition. CASE shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

\s\
Krause, Acting P. J.

We concur:

\s\
Mesiwala, J.

\s\
Wiseman, J.*

---

\*     Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14